## No. 2481
### Second Circuit

---

## JOHN SHARP PRICE v. GILLILAND OIL COMPANY

(November 4, 1925, Opinion and Decree.)
(December 17, 1925, Rehearing Refused.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Master and Servant —Par. 159, 159 (a).**

The plaintiff, an injured employee, suing for compensation under the Workmen's Compensation Law, Act No. 20 of 1914 proved that although the fractured bone in his foot had completely healed there remained a tilting which caused pains when he stood up and tried to walk. Therefore he has a right to compensation for total disability to do work of any reasonable character under Section 8, Subsection 1 (b) as amended by Act 216 of 1924.

2. **Louisiana Digest—Master and Servant —Par. 159, 160 (e).**

Where a condition of total disability at the time of the trial in a suit under the Workmen's Compensation Act, No. 20 of 1914, Section 8, Subsection 1 (b) is shown and it is likely to continue for a considerable time, we think the purposes of justice demand that the matter be left for time to determine. In case the total disability does cease, defendant can avail itself of the right granted by the statute to review the judgment after a year.

ON APPLICATION FOR A REHEARING.

3. **Louisiana Digest—Master and Servant —Par. 159, 159 (a).**

Where it is shown that it is possible for an injured employee suing under the Workmen's Compensation Act No. 20 of 1914, Section 8, Subsection 1 (b) to do some work, it would be a harsh and unjust ruling to hold that he must work while in pain, when it is shown that work will retard the process of healing. Therefore, judgment for total disability is justified.

Appeal from First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

This is a suit brought by an injured employee for compensation under the Workmen's Compensation Act No. 20 of 1914, Section 8, Subsection 1 (b) of 1924. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Julius T. Long, of Shreveport, attorney for plaintiff, appellee.

Alex F. Smith, of Shreveport, attorney for defendant, appellant.

CARVER, J.    This is a suit under the Workmen's Compensation Law, Act 20 of 1914, as amended by Act 216 of 1924, page 398, in which plaintiff claims compensation on the basis of total disability under Section 8, 1 (b) of the act as amended.

Defendant admits liability, but claims that the disability is only partial and temporary.

## I.

### EXTENT OF DISABILITY

On November 25, 1924, while removing coils from a water tank in the Homer Oil fields, a stack of steel pipe consisting of seven pieces, each two inches in diameter and about twenty feet long, fell on plaintiff's foot and leg. The internal malleolus or ankle knuckle was fractured and slightly displaced.

Plaintiff was carried to Doctor Middleton who put splints on the foot. After three or four days these were removed and the foot was encased in a plaster of paris cast, which remained twenty-one days.

Plaintiff married on February 21, 1925, and a few days afterwards went to Griffith, Arkansas, where he stayed about two weeks. While there he worked for the Standard Oil Company as a roustabout a few days and afterwards as pumper a few days. The testimony does not show exactly how many days he worked in either capacity.

He then returned to the Homer field to the house of his father-in-law.

In April he worked for the United States Central Company pipeline three days and in May for the Standard Oil Company cleaning up the yard three days.

While engaged in these various jobs he received standard wages of $4.50 to $5.50 per day.

The trial was held on May 26, 1925.

Plaintiff testified that his foot pains him all the while; that when he works it pains worse, swells up, gets sore and "gives out" so he is not "able to stand up and walk".

Doctor Adair took an x-ray picture of the foot on February 14, 1925, and Doctor Barrow one on March 15, 1925. The second one showed improvement.

Physicians examined plaintiff a few days before the trial and on the day of the trial. There was some difference of opinion between them some of which was due perhaps to the fact that their attention was not directed to exactly the same things.

It seems that the fracture of the bone had completely healed at the time of the trial, but there remained a slight tilting and none of the physicians claimed that his foot was well.

Doctor Sanderson testified that the foot was turned outward and was flat; that the arch seemed to have broken; and that the bearing of the weight had been shifted to the inner side of the center of the weight bearing line of the foot and ankle joint, throwing the weight on one instead of both the gondyles of the tibia, causing the foot to tire easily.

He further says that though the extent of an injury to the ligaments of the ankle joint could not be determined either by an x-ray picture or by physical examination, yet that tiny force sufficient to frac-

ture the internal malleolus is bound to have lacerated the ligaments.

Doctor Cassity agreed with Doctor Sanderson as to the foot being flat, as to the shifting of the weight to one side, and as to the laceration of the ligaments in such injury. He also said he could hear a rough sound in the joint as of a tendon inflammation and that there was serious impairment of the ligaments.

Doctor Barrow, who took the second picture, testified that it showed improvement from a bone standpoint since the first picture was taken, and further, that the arch appeared above the normal limit and did not show flatness of foot.

Doctor Crain says:

"I examined the man's foot, both of them up and down and laterally of both feet, and I find one foot practically the same as the other, I find an enlargement over the internal malleolus which is a natural consequence of a broken joint—the foot here from the x-ray shows the internal malleolus fracturem as practically healed, of course I took Dr. Barrow's views on that as to its position." o

He was not asked as to inflammation of tendon laceration of ligaments, displacement of malleolus, shifting of weight or turning of foot outwardly. Both he and Doctor Sanderson thought that the plaintiff could work but that it would be painful. In Doctor Sanderson's words, plaintiff's injury was not so much a disabling one as a painful one. He further says that heavy work would pain very severely but that in his opinion plaintiff could go to work and support himself and wife.

Doctor Crain on being asked how long it would be before the trouble would be corrected, replied:

"Well, I should think that if it is handled properly, that is, stay off of it long enough and do not try to do too much heavy work on it, I would think that four or six months more ought to fix it all right, as well as it is possible for it to get."

On this testimony the district judge concluded that plaintiff's condition was one of total disability and compensation was allowed on that basis. We cannot say he manifestly erred. The few days' work that plaintiff did—causing his foot to swell and the pain to increase as it did doubtless retarding recovery, although some of the jobs are shown to have been easy ones —was not, we think, work of a reasonable character.

## II.

### AS TO PERMANENCY.

Doctor Sanderson says that in his opinion there will be no future improvement unless something is done to adjust the weight-bearing point and he does not know what could be done.

Doctor Crain, as shown by his testimony, above quoted thinks that in four or six months more his foot will be all right or at least as well as it is possible for it to get, provided plaintiff stays off of it long enough and does not try to do too much heavy work on it.

Doctor Cassity says:

"I would simply say that there was a possible clearing up absorption of the bony products, due to the fracture of the bone becoming more solid, and that would not have any bearing upon the cause of the disability here, you see it is not the bone in my judgment, that is causing the disability."

"Q. Now, what was that grating that you spoke of in there?
"A. That, I judge to be due to some remaining inflammation or irritation of the tendon sheet, and that now, I will say that that possibly may be reduced by the rest that you could give him and would probably clear up, but if he returns to work and is on his feet a great deal for a long time, it would probably come back again."

Doctors Barrow and Adair were not asked about this prophesy as to when if ever the condition of total disability to

do work of a reasonable character will cease.

Where a condition of total disability at the time of the trial is shown which is likely to continue for a considerable length of time, we think the purposes of justice demand that the matter be left for time to determine. In case the total disability does cease, defendant can avail itself of the right granted by the statute to review the judgment. This was our holding in the case of Chandler vs. Oil Fields Gas Co., 2 La. App. 778; O'Donnell vs. Fortuna Oil Co., 2 La. App. 462, and King vs. McClanahan, 3 La. App. 117.

The judgment of the lower court was in favor of the plaintiff for twenty dollars per week during disability for not exceeding four hundred weeks beginning November 25, 1924, subject to a credit of two hundred dollars paid by defendant, and fixing the attorney's fees of plaintiff's attorney, Julius T. Long, at one-third, and for the reasons above given it is affirmed.

---

## ON APPLICATION FOR REHEARING

ODOM, J.   In its application for rehearing, defendant complains at the court's finding that plaintiff is totally disabled and points out that Dr. Sanderson testified that plaintiff could do some work.

It is no doubt that plaintiff can do some work, but Dr. Sanderson and other physicians testified that plaintiff suffered pain while standing, and some of the physicians testified that in order for the fracture to heal properly, plaintiff would have to rest.

Even where it is shown that it is possible for an injured employee to do some work, it would be a harsh and unjust ruling to hold that he must work while in pain, and especially so when it is shown that work will retard the process of healing.

If we thought the plaintiff could work without pain and suffering and that such would not aggravate the fracture, we would not hesitate to hold that he is only partially disabled.

But under the circumstances of this case, we think our findings are correct.

Rehearing refused.