**HIBBARD v. BLANE et al.**

No. 5690.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

Rehearing Denied June 30, 1938.

Theus, Grisham, Davis & Leigh, of Monroe, for appellants.

Bernstein, Clarke & Thompson, of Monroe, for appellee.

HAMITER, Judge.

Plaintiff became overbalanced while standing on a ladder performing carpentry work in a building at Tallulah, Louisiana, and fell a distance of approximately five feet to a concrete floor. Injuries were sustained by him as a result of this fall which occurred on the morning of November 12, 1936.

Compensation as for total and permanent disability, or at the rate of $20 per week for a period not exceeding 400 weeks, together with the sum of $250 as medical expenses, less a credit of 38 weekly compensation payments of $20 each previously paid, is claimed by plaintiff in this suit which he instituted under the Employers' Liability Act of Louisiana, Act No. 20 of 1914, as amended, against his employer, W. H. Blane and the latter's compensation insurer, Traders & General Insurance Company of Dallas, Texas. He alleges that he landed stiff-legged upon the concrete floor, in his fall from the ladder, causing a severe strain and fracture of his right foot and a left inguinal hernia, and that the accident happened while in the scope and course of his employment. He further alleges that he was earning a weekly wage of $54 at the time.

Defendants, by answer, admit the occurrence of the accident as alleged, the asserted weekly wage of plaintiff, and that he sustained some injury to his right foot. They deny, however, that a hernia resulted, and affirmatively aver that, "* * * following said accident, in addition to paying and assuming medical expenses provided by law, defendants commenced the payment of compensation at the rate of Twenty ($20.00) Dollars per week and continued same for a period of thirty-eight (38) weeks, paying thereby a total of Seven Hundred Sixty And No/100 ($760.00) Dollars in compensation, said payments representing the entire amount due by defendants to plaintiff inasmuch as the injury received by him in said accident was confined to the foot, said injury has healed, and if there be any residual disability that the payments thus far made exceed the percentage of said disability to said foot."

Defendants further aver that they incurred and paid medical expenses which exhausted the limit of $250 fixed by law.

The trial of the case resulted in a solidary compensation award in plaintiff's favor and against defendants as for total temporary disability, or at the rate of $20 per week for a period not exceeding 300 weeks, beginning November 12, 1936, with legal interest on all past due installments from maturity until paid, less a credit of 38 weeks at $20 per week. The judgment is silent with reference to the claim for $250 as medical expenses, and the presumption is that it was rejected. The court also decreed that the medical expert witness fees be fixed at $75 on each side, and taxed as costs against defendants.

This appeal was perfected by defendants. It has been answered by plaintiff who prays that the judgment be amended to the extent of (1) awarding compensation as for total and permanent disability, or for a period not exceeding 400 weeks, (2) decreeing defendants liable for medical expenses in the amount of $250, and (3) fixing the fees of plaintiff's expert witnesses in the several amounts named in the answer to the appeal, all of which total $225; and that, as amended, the judgment be affirmed.

The record presents for our consideration:

1. The nature, extent and effect of plaintiff's injuries.

2. The claim for medical expenses.

3. The matter of fixing the expert witness fees.

Plaintiff enjoys the distinction of being and is known as a finished carpenter. By that is meant a person who can perform all kinds of carpentry work necessary in the construction of a building from its foundation to the roof, both inclusive. His is the highest position in the carpentry trade. He had followed that occupation for about 17 years and it was the only one for which he was trained.

Immediately following the accident, which occurred on November 12, 1936, as before stated, plaintiff was taken to a clinic in Tallulah, Louisiana, where his right foot was X-rayed and strapped with adhesive tape, and a hypodermic injection was given him. After receiving this treatment he went to his home in Monroe, Louisiana. During the following day he visited the

office of a physician in the last named city, at which time a second X-ray was made and his foot placed in a plaster cast. The cast remained on the injured member until about January 1, 1937. For several weeks thereafter he used crutches in moving about. These were discarded in favor of a cane which assisted him for 4 or 5 weeks and until he was able to walk unaided.

During the first part of February, 1937, he noticed for the first time evidence of the existence of a left inguinal hernia. No complaint was made of this to defendants or their representatives until the month of May following, when the hernia assumed a recognizable form and shape. He had possessed a hernia on the right side for approximately 25 years, this having been received when in his teen age.

Weekly compensation payments of $20 were regularly paid to plaintiff from the date of his fall until August 6, 1937, or for a period of 38 weeks, and during that time numerous physicians examined him.

It is seriously contended by plaintiff's counsel that the left inguinal hernia was brought about by reason of the precipitation from the ladder. Plaintiff testified that it did not exist prior to the accident, and that he knew of nothing that could have caused it except the fall. He attributes his failure to notice pain from or evidence of it, during the two months following the accident, to the severe suffering from his foot, the hypodermics administered and the fact that he was in bed much of that time. While there is expert medical testimony in the record to the effect that the fall was sufficient to produce the left inguinal hernia, and to support plaintiff's belief regarding his failure to observe it for several months, it is not proved with legal certainty that the accident was responsible for or produced the hernia, or that there was a causal connection between the two. This conclusion is in accord with that of the trial court.

Plaintiff's contact with the concrete floor caused a crushing comminuted fracture of the oscalcis or heel bone of his right foot, which resulted in circulatory disturbance, traumatic arthritis, a marked deformity of the arch and diminution in length of the heel bone of that foot. When the trial of the case occurred, which was in December of 1937, or approximately 13 months after the accident, his injured member showed some swelling and he experienced pain when weight was placed on it. Also, considerable suffering was endured upon its movement inward and outward. The fractured portions of the oscalcis had become firmly united, but there was some lateral displacement and slight roughening and distortion of the joint between the astragalus and the oscalcis. All of the medical experts testifying, both plaintiff's and defendants', agreed that the foot provided disability which would continue for some time and prevented plaintiff from performing all of the duties required of a finished carpenter; however, there was disagreement as to the percentage of that disability. Estimates of these physicians regarding the functional incapacity of the foot ranged from twenty per cent to forty-five per cent.

Practically all of the experts were of the opinion that so long as plaintiff walked on an even surface and his foot was not subjected to any turning from side to side no appreciable pain would be experienced by him; but that he could not successfully undertake the climbing of ladders or the performing of his carpentry duties on uneven or rough surfaces, for in such instances his foot would be turned with resultant excruciating pain.

In view of the enumerated incapacities, we must hold, as did the trial judge, that plaintiff's disability was total within the meaning and intendment of the Employers' Liability Act as interpreted by the modern jurisprudence of this state. It is well and properly stated in the brief of plaintiff's counsel that:

"His injury was such as to affect his ability to pursue his occupation of journeyman carpenter and foreman, which required him to climb ladders, work on scaffolds and on roofs, walk beams and joists, and about floors that were accumulated with blocks and chips, to walk on soft and uneven ground, to assume various and sundry positions and to do those things ordinarily incident to the occupation of building a house or other such structure. The effect of the injury to his foot was not limited to the member itself but affected his entire ability to carry on his occupation, the only one for which he was trained and the one in which he had been engaged for the past 17 years. Under such circumstances the courts have repeatedly held that the general, rather than specific, provision of the statute applies." McGruder v. Service Drayage

Co., 183 La. 75, 162 So. 806; Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185; Schneider v. Travelers Ins. Co., La.App., 172 So. 580.

The fact that plaintiff might be able to perform some parts or portions of the occupation for which he is trained does not render him only partially disabled. Work of a reasonable character as used in the general disability provisions of the compensation act means that kind of work for which the claimant is fitted by status, training and education, and such as he was performing or was accustomed to before the occurrence of the accident. Biggs v. Libbey-Owens-Ford Glass Co., La.App., 178 So. 639; Ingram v. Meridian Lumber Co., La.App., 178 So. 187; Hennen v. Louisiana Highway Comm., La.App., 178 So. 654; Schneider v. Travelers Ins. Co., supra.

Then, too, it is not encumbent upon plaintiff to attempt the performance of his work in his injured condition, when to do so would aggravate the injury. On this point the following testimony was given by an orthopedic surgeon, testifying for defendants:

"Q. Assuming that Mr. Hibbard had tried to work, that he was called on to walk on gravel or soft ground and that as a result of that attempt his ankle swelled, what would you say caused the swelling? A. The natural assumption would be that the increased activity and the use of the foot on more irregular surfaces probably aggravated the injured joint.

"Q. If he kept on aggravating the injured joint in that manner, what would be the result of that? Would it grow better or grow worse? A. It probably would grow worse, certainly for a time."

Pertinent are the following remarks of Justice Odom, when a member of this court, in the case of Price v. Gilliland Oil Co., 3 La.App. 175:

"It is no doubt that plaintiff can do some work, but Dr. Sanderson and other physicians testified that plaintiff suffered pain while standing, and some of the physicians testified that in order for the fracture to heal properly, plaintiff would have to rest.

"Even where it is shown that it is possible for an injured employee to do some work, it would be a harsh and unjust ruling to hold that he must work while in pain, and especially so when it is shown that work will retard the process of healing.

"If we thought the plaintiff could work without pain and suffering and that such would not aggravate the fracture, we would not hesitate to hold that he is only partially disabled."

It is true that plaintiff was employed for several weeks between the time of the accident and the date of trial, and was paid reasonable wages for his services. This employment, however, in our opinion did not affect his right to receive compensation as for total disability. Most of the work was performed after defendants had discontinued paying compensation and he was compelled to obtain funds in order to care for his family consisting of a wife and three children. Biggs v. Libbey-Owens-Ford Glass Co., supra. Furthermore, he was acting only in the capacity of a foreman or work overseer, a position which he was fortunate in obtaining, and was not required to perform any manual or carpentry labor.

None of the experts could fix with any degree of certainty the probable duration of plaintiff's disability. The physician who was treating claimant, and had not discharged him when the trial was had, testified as a defense witness that the injury would probably be adjusted in from 12 to 18 months. Several would not even hazard a prediction in this regard, while others considered that the pain would endure indefinitely unless cured by surgery. An orthopedic surgeon testifying as plaintiff's witness, was of the opinion that the injury was permanent in so far as any natural healing is concerned. He thought that an operation was necessary, and that if and when performed practically a painless foot, but not a normal one, would result. The orthopedic surgeon offered by the defendants, to whom reference has hereinabove been made, was asked if anything other than an operation would cure the trouble. He answered:

"No, I think the palliative measures which were referred to would diminish the discomfort somewhat, but would not eliminate it and I know of nothing else that would really eliminate the pain."

His further testimony was that the operative treatment called for the obliterating of three joints of the foot below the ankle joint, the effect of which would be to stop its inversion and eversion at the heel.

■ In view of the evidence just discussed, and particularly because the probable duration of plaintiff's totally disabled condition is not fixed with reasonable definiteness and indications are ·that the incapacity will endure for a considerable period of time, it must be held that he is entitled to compensation during disability ·but not exceeding 400 weeks, instead of the period set by the district judge. This holding is consistent with the Louisiana jurisprudence. Schneider· v. Travelers Ins. Co., supra, and cases therein cited; Mayon v. Jahncke Service, Inc., La.App., 177 So. 399.

Should the disability cease before the elapse of the named time limit, defendants can take advantage of the protective remedy granted by the compensation statute. .

■ With reference to plaintiff's claim for medical expenses, this court said in the case of Burrows v. Arizola Petroleum Co., 7 La.App. 704, that:

"Under the act an injured employee is entitled to medical and surgical expenses not exceeding $250.00. But unless he spends or becomes obligated for that much he cannot recover that amount. In any event, he cannot recover more than he proves."

The record in the instant case does not conclusively show the amount that plaintiff spent, if any, or that for which he obligated himself, for medical and surgical attention, and we are of the opinion that the district judge correctly rejected his claim for this item.

■ The medical expert witnesses employed by plaintiff in the trial of the case numbered four, while seven appeared for defendants. Regarding the fees of these, the trial court decreed, "that the medical expert witness fees are hereby ordered fixed at $75.00 on each side, and taxed as costs against defendant". Plaintiff complains of the stipulated limit, through his answer to the appeal, and urges that the fee of each expert should have been fixed in a reasonable amount. Our views are in accord with plaintiff's contention. In the case of Harris v. Southern Carbon Co., 162 So. 430, we stated that an expert fee should be allowed to each expert witness who testified in the case. Where a total fee limit is provided for all of the expert witnesses testifying, as was done in this case, each cannot be properly com-

pensated. We think, therefore, that 'the case should be remanded for the purpose of fixing the fees of the medical expert witnesses in accordance with the views herein expressed.

Accordingly, and for the reasons assigned, it is ordered that the judgment in so far as it pertains to the fixing of the expert witness fees be reversed, and the case is remanded for the sole purpose of having them fixed as above set forth; that the judgment be amended to the extent of awarding the named compensation during plaintiff's disability but not exceeding 400 weeks; and that in all other respects the judgment be affirmed. All costs to be paid by appellants.