JANVIER, Judge.
Plaintiff, a truck driver employed by Campbell “66” Express Company, sustained injury to his right knee on April 18, 1957, when a heavy box fell from the truck and struck his leg. He was sent by his employer to Dr. W. Rogers Brewster who referred him to Dr. H. R. Soboloff, an orthopedist specialist. Dr. Soboloff found that the plaintiff had sustained “a torn cartilage” and “a softening of the surfaces of the bone,” and a “little arthritis in the knee”. It was necessary to perform an operation which is referred to as a meni-sectomy and a part of a cartilage in the knee was removed. This operation was performed on May 21, 1957.
Sometime after the operation the plaintiff returned to work for the same employer and was given identical work and received the same pay.
At the time of the trial in the District Court, which was more than two years after the accident, he was still employed by the same employer, doing the same work and at a pay which had been increased slightly due to a general increase to all employees.
During the time in which plaintiff could do no work, he was paid full compensation and all medical expenses were paid. The compensation paid him totaled $905. Conceding that he had continrted to work for the same employer, doing the same work and at the same pay, he brought this suit against the employer and the Transport Insurance Company, the insurer of the employer, contending that, though he had done and was doing the same work, he did so only with considerable pain and that therefore he should be considered as totally permanently disabled.
Defendants maintain that, because of the fact that, for more than two years, he continued to do the same work, for the same employer, and at the same or higher weekly pay, he could not be considered as totally permanently disabled, and, in the alternative, contend that if he was entitled to compensation at all, it should be on a basis of partial disability due to the fact that it was conceded that the function of his right leg had been decreased by approximately twenty or twenty-five per cent.
*109 In the District Court there was judgment in favor of plaintiff and against both defendants under which they were required to pay him maximum compensation of $35 per week for a period not in excess of 400 weeks, subject to a credit for each week during which he had been employed and had received as much as $35 per week, and subject to a further credit of twenty-five and six-sevenths weeks during which he had been paid maximum compensation. In the judgment the fee of the attorney for plaintiff was also fixed, as was the fee of a medical expert. From this judgment defendants have appealed.
The District Judge set forth his reasons as follows:
“I can only hold at this time that plaintiff suffered a compensable injury, and voluntarily underwent an operation to his injured knee. lie resumed working for the same employer, doing the same character of work, but doing it in pain. As long as he works with the same employer and receives the same compensation, he is not entitled to compensation. The moment he quits or works for another employer and is disabled, he can collect compensation. From the testimony I find he suffered a 25% disability.
“Plaintiff cannot work except in pain, driving a truck and lifting freight on and off the truck. The medical testimony and the testimony of plaintiff is that he gets fatigued and suffers pain and discomfort while at work.
“Plaintiff is entitled to $35.00 a week, not to exceed 400 weeks, less credit for wages paid to him by his present employer who employed him at the time of injury. Pohl v. American Bridge Division, U. S. Steel Corp., [La.App.] 109 So.2d 823. Guillory v. Coal Operators Gas [Cas.] Co., [La. App.] 95 So.2d 201. Mottet v. Libley [Libbey]-Owens-Ford Glass Co., [220 La. 653] 57 So.2d 218.”
In support of their contention that the plaintiff should not be considered as totally permanently disabled, defendants point to certain conceded facts, first of which is that, for some twenty months preceding the date of the trial, plaintiff had done identical work for the same employer and at the same pay. And they also point to several statements of plaintiff which, if not read in connection with other statements, might indicate that the pain which he suffered was intermittent and not continuous and not particularly severe.
Plaintiff, on the other hand, relies upon the testimony of Dr. Edward Haslam, an expert produced by him, and particularly upon the testimony of Dr. Soboloff, an orthopedic expert produced by the defendants themselves, and upon the testimony of Dr. Soboloff we base our conclusion that the judgment in favor of plaintiff was correct and that, though he has been able to perform the same work, he has done so only with considerable pain and also that there is the grave possibility that he will later have to undergo an additional operation which will further incapacitate him.
It is interesting to note that the testimony of Dr. Haslam and the testimony of Dr. Solomon Winokur, an expert produced by the defendant, cannot in certain particulars be reconciled. It appears that shortly before the trial, at the same time, these two experts examined plaintiff’s knee and that, as a result of that examination, Dr. Haslam found that it was some three-quarters of an inch larger than it should be and that there was every reason for the disability and the pain of which plaintiff complained, whereas Dr. Winokur, at the same examination, found that there was no increase in the size of the knee and that there was no reason for the pain of which plaintiff complained.
In view of this conflict we have found it interesting to note that there is no doubt at all that Dr. Soboloff obviously believed that, at the time of the trial, plaintiff’s condition had substantially worsened; that there was good reason for the pain of *110 which he complained, and that there was possibility that an additional operation might be necessary.
Dr. Soboloff, as already stated, performed^ the operation on May 21, 1957. On October 10, 1958, in a report which he made to the N. O. Rosenbush Claim Service, he stated:
“This patient now exhibits rather extensive degenerative changes of the knee. It has been seven months since the time of discharge and this is much more advanced than previously. He also has loss of the last 20° of extension and some pain on flexion due to degenerative arthrosis of the knee. It is felt that this is more than would ordinarily be expected of fair wear and tear and could be attributed to the injury previously sustained with resultant necessity for menisectomy. * * ”
Still later, in June, 1959, which was more than two years after the original operation, in a letter to counsel for defendant, Dr. Soboloff said:
“It is felt that the problem involved here is primarily that the patient is now two years following the injury and subsequent surgery which necessitated the removal of the medial cartilage. The patient had some pre-existing arthrosis which has become progressively worse. It is the opinion of this examiner that either as a result of the injury or the surgery, or a combination of both, the patient had developed more arthrosis. This is now of a traumatic type and is superimposed on the osteoarthrosis that existed at that time. This causes the patient to have on a clinical basis, a 10 to 15 per cent permanent disability from the functional standpoint of the right leg. It is the opinion of this examiner that if the patient had to merely sit and drive a truck, he could do this with the disability as listed above. However, if the job requires him to get in and out of the truck, loading and unloading constantly through the day, he would have difficulty in continuing an eight hour day, and if he had. to go more, would have definite difficulty with aching, soreness, swelling, and pain superimposed on the knee, depending on the amount of activity required. However, if he could do light pick up work around the city, with the lighter load and a smaller truck to handle, he could do this with the disability as outlined above.”
In his testimony itself, when asked a question concerning a report which, on May 29, 1959, he had made to the N. O. Rosenbush Claim Service, this testimony involving the question of whether or not there was cause for the complaints of pain which the plaintiff had been making, Dr. Soboloff said:
“Because of the extensive degenerative changes in the knee, it is thought that the patient had sufficient reason for the complaints. It is the opinion of this examiner that the possibility of complete surgical debridement of the knee may be indicated, and that there is question of a patellectomy, by which means removal of the kneecap in the near future would have to be considered * *
In view of this testimony of Dr. Soboloff, the expert produced by the defendants, we find it impossible to avoid the conclusion that plaintiff not only suffered substantial permanent injury to his right knee, but that there was real cause for the complaints of pain which he had been making.
Defendants point to several statements of plaintiff which might be interpreted as indicating that the pain was only intermittent, but there are other statements of his and testimony of lay witnesses which indicate that his pain was almost constant and that, whenever it was necessary to lift heavy objects or to jump from the body of the truck to the ground, or to climb to the body of the truck from the ground, he suffered substantial pain.
*111 In his work on Louisiana Workmen’s Compensation Professor Wex S. Malone, in section 274, says :
“Where the employee can do the same kind of work but suffers great pain, the courts say that the humane philosophy of the compensation act would not permit them to require that he endure such discomfort or to bar him from compensation because economic necessity obliges him to continue working under physical distress. * * ”
We recognized that fact in Beloney v. General Electric Supply Co., 103 So.2d 491, and cited Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175. The Supreme Court, in the Reed case, cited many earlier authorities, particularly Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, 3, in which we find the following:
“The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, ■or that he do so when it will materially increase not only the hazards of his •own health and safety, but also to those •of his fellow employees. This is the .settled jurisprudence of all of the appellate courts of this state. See, Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Lee v. International Paper Co., La.App., 16 So.2d 679; Brown v. Furr, La.App., 19 So.2d 283; Schneider v. Travelers Insurance Co., La.App., 172 So. 580; Hibbard v. Blane, La.App., 183 So. 39; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346; Murphy v. B. Mutti, Inc., La.App., 166 So. 493; Godeaux v. Travelers Ins. Co., La.App., 58 So.2d 427; Angers v. Employers Liability Assur. Corp., La.App., 50 So.2d 87; Stansbury v. National Auto & Cas. Ins. Co., La. App., 52 So.2d 300; and Newsom v. Caldwell & McCann, La.App., 51 So. 2d 393. See, also, the additional authorities cited and discussed by Malone in his work on the Louisiana Workmen’s Compensation Law and Practice, Sections 272-275.”
While the plaintiff in the case at bar has done the work in a most satisfactory manner, we are convinced that it has been only with considerable pain. Basing our conclusion on the established jurisprudence we feel that he is entitled to compensation based on total permanent disability.
Counsel for plaintiff concede that, so long as plaintiff did the same work for the same employer, at the same rate of pay, credit was properly given on a week per week basis and that therefore the deduction from 400 weeks of those weeks during which he worked was properly made.
Accordingly the judgment appealed from is affirmed at the cost of appellant.
Affirmed.