LANDRY, Judge.
This is a cumulation of actions by three brothers, Murphy, Barton and Peter La-Coste seeking an adjudication of their entitlement to workmen’s compensation benefits for total and permanent disability allegedly resulting from the occupational disease known as silicosis, reputedly contracted in the performance of their duties as sandblasters and painters in the employ of defendant, J. Ray McDermott & Co., Inc., the insured of defendant, The Travelers Insurance Company.
Defendants filed dilatory exceptions grounded upon an asserted improper cumu-lation of actions which exceptions were adversely ruled upon by the trial court under authority of LSA-C.C.P. Articles 464 official Revision Comment (c), and 926. The exceptions are not reurged before this court.
The suit of plaintiff, Peter LaCoste was dismissed upon the joint motion of said plaintiff and the aforenamed defendants suggesting that said petitioner’s claim had been settled by compromise agreement reached in a separate action.
After trial on the merits below, the learned trial court rejected the claims of plaintiffs, Murphy and Barton LaCoste, and from said unfavorable determination said plaintiffs have taken this appeal.
Our esteemed brother below stated the issue thusly:
“The principal question posed for determination in this workmen’s compensation suit is whether, or not, an employee cán be awarded compensation for total disability on account of an occupational disease while he is still working at his regular job and performing his duties well, without any undue pain or discomfort.”
However, in resolving the controversy adversely to plaintiffs, our worthy colleague concluded it was unnecessary to decide the question whether or not plaintiffs had contracted silicosis because, assuming they had, *556 the evidence did not establish their disability as a result thereof. Considering the record establishes that appellants were still performing the duties of their occupation at the time of trial and receiving full wages therefor, the learned trial court further concluded they were not entitled to compensation inasmuch as our law does not permit recovery of compensation while the injured employee continues in his employment at full pay.
He further concluded an employee is not entitled to compensation for total disability unless he is totally disabled to perform work of a reasonable character which rule is subject to only two exceptions, namely: (1) where the employee can still perform his work but only while suffering pain, and (2) where the employee loses a bodily member or suffers disfiguration which does not prevent him from doing his work.
Appellants concede that at the time of instituting suit as well as at the time of trial, both were still employed as sandblasters and painters by defendant employer. Plaintiffs further acknowledge that they were still receiving full wages for a full day’s work; that they occasionally worked overtime and that they had received wage increases along with other employees similarly classified. Appellants nevertheless contend the trial court erred in failing to find they were in fact suffering from silicosis and also erred in denying their claims for compensation benefits as for total permanent disability.
In August of 1962, plaintiffs were given a routine annual X-ray examination by Dr. C. G. Whitley, general practitioner, at the request of appellants’ aforenamed employer. Dr. Whitley detected evidence of fibrosis which prompted him to refer appellants to Drs. J. N. And and William S. Neal, Radiology consultants. On August 4, 1962, Drs. And and Neal reported that chest examination of Barton LaCoste revealed that the “pulmonary fields show a fairly marked generalized fibrosis suggesting a possible silicosis.” Re-examination on July 22, 1963, by Drs. And and Neal disclosed signs identical to those previously noted, with no apparent change in the radiographic appearance of the patient’s chest. Dr. Whitley would not venture a definite diagnosis of the condition of Bar* ton LaCoste but stated “his suspicions would lean toward silicosis.” (The medical evidence relative to Murphy LaCoste will be separately discussed hereinafter.)
On October 7, 1963, Barton LaCoste was examined by Dr. Samuel B. Nadler, a specialist in internal medicine. Dr. Nad-ler stated that X-rays taken pursuant to his direction showed very definite reticulation with punctate densities in the lung field on both sides in the first and second inter-spaces. In a report to defendant insurer dated October 28, 1963, referring to plaintiff, Barton LaCoste, Dr. Nadler said:
“While the pulmonary function studies in themselves were not abnormal, this patient’s history of shortness of breath upon exertion of moderate degree and the finding of changes in both upper lung fields are consistent with the possible diagnosis of silicosis in view of the occupational history of this patient. I believe this patient’s story and this would look like early silicosis to me. At this time this patient is not disabled but has to limit his activities to a pace consistent with being free of shortness of breath. I do not think that he should proceed with further exposure to sandblasting unless very careful precautions are taken to avoid undue exposure of this individual. He already has the physical findings on x-ray suggestive of silicosis.”
In a subsequent deposition Dr. Nadler, referring to appellant Barton LaCoste, gave the following testimony:
“A. We are talking about Batron (sic) LaCoste ?
Q. Yes, sir — continues to work as a sandblaster and if as a result of that *557 work fine dust continued to get into his nose and mouth, will this tend to aggravate the silicosis condition?
A. I would think that if he is working as a sandblaster at a sandblasting job and has changes in his lungs of silicosis at this time, he must do one of two things, either quit this form of work or have adequate dust protection. Now, by “Adequate dust protection,” I mean really, good dust protection, because many of the men who work in plants or in areas like this for their own sakes don’t realize that they mustn’t take the masks off while there is a lot of dust in the air and while they are sandblasting, and many of them do. When Batron (sic) LaCoste was here, I told him this, for his own sake, he is a human being, and I did explain to him that continued exposure to silicosis was a hazard to him as it is to anybody else.
Q. Now, this silicosis, Dr. Nadler, as I understand, it causes shortness of breath. Would it if Batron (sic) La-Coste just got out working, say, ditch-digging or something like that, would the shortness of breath you know doing that kind of hard, manual labor, would that tend to tire him out and slow him down?
A. Well, I am dependent not[1] on what the patient has told me. He told me that when he exerts himself unduly, he has shortness of breath. Now, I don’t think it makes a bit of difference whether he changes automobile tires, digging a ditch or having an affair with some female, I mean, all of these things are exertional effort, and he says exertional effort will make him short of breath so that I would say an answer to your question, that if he can engage himself in an occupation that does not require that he exert himself to the point of shortness of breath, no harm could occur.”
With respect to the medical evidence regarding the condition of appellant Murphy LaCoste, we note considerable conflict therein. When Dr. Whitley referred Murphy LaCoste to Drs. Ané and Neal on August 4, 1962, said consultants reported that the “hilar structures are slightly enlarged and there is a slight generalized pulmonary fibrosis.” The following year, on July 22, 1963, Drs. Ané and Neal reported that the latest film was somewhat darker, but they observed no essential difference in the radiographic appearance. In substance Dr. Whitley testified that Murphy LaCoste was found to have minimal fibrosis, but he could not conclude said appellant had silicosis.
Dr. Nadler examined Murphy LaCoste on October 7, 1963, and reported as follows :
“Essentially the x-ray picture of the chest failed to show any abnormality. There is no evidence of silicosis in these films. The pulmonary function studies done on this patient show some moderate obstruction to air flow but this may well be within the limits found in a heavy smoker. X-ray evidence fails to reveal findings that are even suggestive of silicosis.
“It is not possible on the basis of my findings on this patient to make a definitive diagnosis of silicosis in him. So far as I can tell there is no significant lung disease.”
In his deposition subsequently taken, Dr. Nadler in effect stated he could find no objective evidence at all to indicate Murphy LaCoste was suffering from silicosis. X-rays taken of the patient’s chest proved normal. Dr. Nadler found no evidence of fibrosis in the lungs and neither did he discern any evidence of silicotic process. Dr. Nadler’s findings are at considerable variance with those of Dr. Joseph E. Schen-thal, internist, who examined appellant *558 Murphy LaCoste a few months later as will hereinafter appear.
Dr. Schenthal examined plaintiff, Murphy LaCoste, December 23, 1963, December 30, 1963, January 6, 1964, January 17, 1964 and February 17, 1964. On March 14, 1964, Dr. Schenthal reported that an “occasional faint crepitant rale was noted on inspiration in both lung bases * * *. Pulmonary function studies carried out in the pulmonary laboratory at Touro Infirmary revealed moderately obstructive ventilatory disability which did not improve after Isu-prel * * X-rays of the chest * * * revealed hilar shadows which appeared somewhat prominent, but were thought to be within normal limits. * * * Electrocardiograms * * * revealed changing T Wave patterns compatible with myocardial disease, including myocardial ischemia and possible pericardial changes.” He concluded that appellant Murphy LaCoste had incurred pathology of his lungs and heart as the result of exposure to inhaled dust as a sandblaster.
Dr. Schenthal re-examined appellant Murphy LaCoste on May 8, 1964, and reported his opinion to be that said patient had incurred pneumoconiosis or silicosis, as a result of exposure to dust inhaled while sandblasting. He was of the further opinion permanent damage had resulted from the pneumoconiosis and his prognosis was that increasing obstructive ventilatory disability of the lungs was to be expected.
On August 28 and 31 and September 1, 1964, Dr. Schenthal again re-examined appellant Murphy LaCoste. X-rays taken during these latter examinations, by comparison with prior films, disclosed increased bronchovascular markings in excess of normal limits and no improvement since December 30, 1963. An electrocardiogram made during the examinations conducted in August and September, 1964, revealed evidence compatible with myocardial ischemia and hypoxia. Predicated upon his latest examinations of plaintiff, Murphy LaCoste, his report concerning said patient’s condition concluded with the following:
“It is my impression that Mr. LaCoste has incurred pneumoconiosis or silicosis and that serial evaluation reveals that he has permanent disability. In view of the persistence of the pathologic findings in the chest X-rays, electrocardiograms, and pulmonary function studies over a period of time, associated with the continuation of this patient’s symptoms of disability, I consider that Mr. LaCoste has permanent disability, which is incapacitating. I do not consider him able to work and feel that if he continues to work he will expire. I do not believe that treatment will improve his condition to any significant degree.”
In his deposition appearing of record, Dr. Schenthal testified to the effect that continued hard, manual labor of any kind would be dangerous to a person afflicted with silicosis imposed upon an attendant condition of myocardial ischemia. He explained that silicosis decreases the supply of oxygen to the heart which condition is harmful to a person suffering from myocardial ischemia. Dr. Schenthal further testified that in his opinion Murphy La-Coste was suffering from a disease so extensive he could not do hard manual labor and that the condition will progress and cause him more difficulty with time. He also stated said patient presently showed marked decreased pulmonary functions which studies showed to be abnormally low and which indicated ventilatory disability. According to Dr. Schenthal the studies made showed no improvement and the prognosis was progressive deterioration.
Silicosis or pneumoconiosis are among the occupational diseases listed in LSA-R.S. 23:1031.1, which provides as follows:
§ 1031.1 Occupational disease
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined * * * shall be entitled to the compensation pro *559 vided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed.
* ift * * * *
(Emphasis added.)
In essence appellants maintain that if they are shown to have contracted silicosis as a result of their occupation as sandblasters and painters and that continuing therein would seriously endanger their health, both of which factors they maintain the record shows, they must be regarded as disabled within the meaning and intendment of the term as employed in the workmen’s compensation law of this state.
The express intent of LSA-R.S. 23:1031.1 is to assimilate an occupational disease contracted in the course of an employee’s employment to an injury producing accident. The employee who establishes his contraction of such disease in the course of his employment has proved the equivalent of an accidental injury insofar as concerns his right to workmen’s compensation benefits. Having established contraction of an occupational disease within the course and as a result of his employment, the only remaining factor which the employee must prove to ground his claim for compensation benefits is disability resulting therefrom.
For obvious reasons no other rule could obtain except that in the adjudication of claims for workmen’s compensation benefits the criteria of disability must be identical irrespective of whether the demand is predicated upon disability allegedly resultant from accidental injury or occupational disease. Any other rule would, in our judgment, be illogical, unsound and constitute a manifest anomaly.
Our jurisprudence is established to the effect that if an employee can only perform his duties with danger to himself or his fellow employees, or by exposing himself to greater danger, he is considered totally disabled. McCain v. Fohs Oil Company, La. App., 6 So.2d 197; Veillion v. Knapp & East, La.App., 158 So.2d 336. Equally well settled is the rule that an injured employee is deemed disabled when continued performance of his duties will aggravate his injury. Hibbard v. Blane, La.App., 183 So. 39. In the instant case appellants argue they are disabled because their continued employment as sandblasters and painters will aggravate their condition and constitute a danger to their health and lives.
With respect to an occupational disease, in Johnson v. Travelers Insurance Co., La.App., 99 So.2d 372, this court held that if an employee who had contracted lead poisoning but recovered therefrom could establish that by reason of having had the disease he was more susceptible to a recurrence thereof should he resume his former duties, he would be considered totally disabled. See also Smith v. Houston Fire & Casualty Insurance Co., La.App., 116 So.2d 730. If, however, the employee can continue the same type of work under different industrial environment which will neither aggravate his condition nor endanger his life or health, he is not considered disabled. Comoletti v. Ideal Cement Co., La. App., 147 So.2d 711; Saltzman v. Lone Star Cement Corporation, La.App., 55 So. 2d 674; Anderson v. Rowan Drilling Co., La.App., 150 So.2d 828; Lathers v. Schuykill Products Co., La.App., 111 So.2d 530.
Where, however, the employee is skilled or semi-skilled so that a change of industrial environment would necessarily preclude his continuation of work in the same or similar employment, he is considered totally disabled. In cases of this character the rule is that no hard and fast standard can be established as the criterion or test for adjudication of the illimitable factual situations which may be presented for *560 judicial determination. Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1. Each case must be decided in the light of its own peculiar facts and circumstances, the issue in all such cases being whether plaintiff is disabled to do work of a reasonable character, within the intendment of the compensation statute. Wright v. National Surety Corp., et al., 221 La. 486, 59 So.2d 695.
In view of the rules applicable to the instant case, it appears that appellants’ contentions of disability are meritorious if they can show that as a result of contraction of silicosis, they are no longer able to do work of a reasonable character, which means the same or substantially similar work, without seriously endangering their health.
The onus, however, rests upon appellants who must substantiate the elements of their claims by a fair preponderance of evidence. Buller v. Travelers Indemnity Company, La.App., 118 So.2d 134, and authorities therein cited.
In the instant case the medical evidence reveals appellant Barton LaCoste has some fibrosis present in his lungs. However, the expert testimony is to the effect fibrosis and silicosis are not synonymous, and while fibrosis is a symptom or condition which accompanies silicosis, it, fibrosis, may be caused by diseases other than silicosis. According to the record, fibrosis is reversible and may be checked or cured but silicosis once contracted is irreversible. The consensus of medical opinion adduced herein is to the effect that Barton LaCoste’s condition is suggestive of possible silicosis. The testimony does not establish with reasonable certainty that appellant Barton LaCoste is suffering from silicosis. The hereinabove quoted portion of Dr. Nad-ler’s testimony relative to the condition of Barton LaCoste (the most favorable appearing in the record) establishes only that said medical authority would consider him disabled if he did in fact have silicosis. At no point in his testimony did Dr. Nadler state that he was of the opinion this particular patient was suffering from silicosis. The most that can be said of Dr. Nadler’s evidence is that he suspects the possibility of silicosis with respect to appellant Barton La-Coste. This, of course, is not sufficient. It may well be that in the future this appellant will contract the disease or the present suspicions of the experts will be confirmed. Should he subsequently establish his contraction of the disease and disability resultant therefrom, he could of course assert a new claim for, until such time, he would not be considered disabled. In this regard we note the compensation statute provides that claims for disability resulting from occupational diseases must be filed within four months of contraction of the disease or within four months of the date the disease first manifests itself. LSA-R.S. 23:1031.1(D). We also note that in interpreting the applicable prescriptive provision, the courts have held such claims do not accrue until either total disability requires the employee to terminate his employment or he is aware of his condition and its causal relationship to his employment. Frisby v. International Paper Company, La.App., 76 So.2d 621; Ludlam v. International Paper Co., La.App., 139 So.2d 67. We are in agreement with the views expressed in the cited authority and concur in the liberal interpretation accorded the prescriptive statute applicable in these cases. Because most occupational diseases occur progressively and are insidious in nature, we believe the legislative mandate of liberality imposed upon the courts by the provisions of LSA-R.S. 23 :1317 is peculiarly applicable in adjudication of claims grounded upon alleged occupational disease. Symptoms of such diseases may be vague and indefinite and may be exhibited by a particular employee for an indefinite period before they progress to the point where the employee becomes aware of his malady or seeks medical advice which eventually results in a positive diagnosis.
In the present case Barton LaCoste testified he suffers pain and shortness of breath upon strenuous exertion or as he put it when “he hurries.” While his physicians *561 suspect he has silicosis related to his employment they are not able to state with any degree of certainty he does in fact have silicosis at this time. Until it can be established by competent testimony with that degree of certainty required by law that Barton LaCoste has contracted silicosis, the claim for compensation will not be deemed to have accrued.
With respect to the demand of appellant Murphy LaCoste the medical testimony varies between a finding of minimal fibrosis accompanied by no significant lung disease, to a diagnosis by an equally qualified expert that he is in fact afflicted with silicosis and will die if he continues his occupation as sandblaster and painter.
It is settled law that in a compensation action lay testimony may be considered in determining disability where the expert testimony is in conflict. Holden v. Circle Drilling Co., Inc., La.App., 110 So.2d 797. In the present case the sole lay testimony consists of appellant’s statement that he suffers from shortness of breath and chest pains after strenuous physical exertion. Appellant made no complaint of pain to his fellow employees. Due to the nature of the disease as explained by the experts it would appear lay testimony would be of little value in establishing its presence.
In the evaluation of medical testimony, it is an established principle that the courts will consider the relative opportunity each expert had to familiarize himself with the claimant’s condition. The testimony of a medical expert who has examined a claimant repeatedly over a long period of time will be accorded greater weight than that of another who has examined the claimant only once or twice. Booker v. Phoenix Insurance Company, La.App., 124 So.2d 246; Butler v. American Insurance Company, La.App., 138 So.2d 862; Harris v. Great American Indemnity Company, La. App., 142 So.2d 594. The aforesaid rule is of peculiar application in a case such as the present, namely, one in which an occupational disease develops gradually and progressively. In such circumstances the physician who examines the patient over an extended period of time has the greater opportunity to observe manifestations of the progress of the disease. The testimony of Dr. Schenthal is clearly to the effect that to properly diagnose and treat silicosis serial observations of the patient are necessary. In the instant case the testimony of Dr. Schenthal is to be accorded greater weight than that of Dr. Nadler because of the greater opportunity of the former to observe, examine and test the patient.
We conclude that appellant Murphy LaCoste has established by a preponderance of evidence that he is suffering from silicosis contracted in the employ of defendant, J. Ray McDermott & Company.
In view of the testimony of Dr. Schenthal appellant Murphy LaCoste must be considered permanently and totally disabled. Albeit he is presently performing his duties as sandblaster without complaint of pain, it nevertheless appears that if he continues such pursuit he will unquestionably suffer a serious impairment of his health or die. That his continuing his occupation will without doubt aggravate his injury (in this case the occupational disease of siliosis) and expose him to greater danger than would attend an uninjured workman engaging in the same occupation is clear from the record. Granted this particular appellant is presently performing all aspects of his occupation as fully as he did prior to contraction of the disease in question, he is nevertheless considered disabled within the meaning of the term as employed in our workmen’s compensation statute. The statute does not contemplate that an employee having an occupational disease, but still able to perform the duties of his trade or calling, must continue in such undertaking until his complete physical collapse or demise. It suffices that having contracted the disease, the employee is deemed disabled if his further engagement in such occupation will either materially im *562 pair his health, cause serious deterioration of his general physical condition, aggravate his disease, expose him to greater risk or danger than that attending an uninjured workman in the same field or accelerate his demise. McCain v. Fohs Oil Company, La. App., 6 So.2d 197; Veillion v. Knapp & East, La.App., 158 So.2d 336; Hibbard v. Blane, 183 So. 39; Johnson v. Travelers Insurance Co., La.App., 99 So.2d 372.
We believe any other construction would subvert the basic humanitarian purpose of the applicable law and contravene the clear legislative admonition of liberal interpretation contained in LSA-R.S. 23:1317; Wallace v. Remington Rand, Inc., et al., 229 La. 651, 86 So.2d 522; Meyers v. Southwest Region Conference Association of Seventh Day Adventists, et al., 230 La. 310, 88 So.2d 381.
The conclusion reached poses another problem, namely, whether our workmen’s compensation law contemplates that any employee shall receive workmen’s compensation benefits for total and permanent disability while he continues to receive full pay for the uninterrupted performance of his regular duties.
It has long been established in our jurisprudence that where an employee, because of economic necessity, is forced to continue work performing his usual duties in substantial pain, he is nevertheless considered totally and permanently disabled. In such cases, however, the employer has been given credit for the number of weeks during which the employee continued to work for the employer. Wilson v. Fogarty Brothers Transfer Company, La.App., 126 So.2d 6; Daniel v. Transport Insurance Co., La.App., 119 So.2d 107.
In Smith v. Houston Fire & Casualty Insurance Co., La.App., 116 So.2d 730, an employee who sustained a hernia in the course and scope of his employment was found to be totally and permanently disabled, notwithstanding the fact that he continued his employment for the same employer, in the' same capacity, discharging the same duties, and receiving the same pay. The court, however, felt it would be inequitable to permit the employee to recover at one and the same time, both wages and compensation from his employer and his employer’s insurer. It therefore granted the employer a week-for-week credit for wages paid.
Since the foregoing cases were decided, the Supreme Court has established the rule, without expressly overruling prior jurisprudence, that an employer or insurer is not entitled to credit against compensation liability for wages fully earned by the disabled employee. Lindsey v. Continental Casualty Company, 242 La. 694, 138 So.2d 543. In reaffirming the rule of the Lindsey case, the Supreme Court in Madison v. American Sugar Refining Company, 243 La. 408, 144 So.2d 377, stated the applicable principle thusly:
“The Court of Appeal considered under the holdings in Mottet v. Libby-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 216, and Myers v. Jahncke Service, Inc. (La.App.), 76 So.2d 436, that the employer was entitled to credit for every week that the employee worked after the commencement of disability in March, 1959, because he continued to work as a common laborer, no matter what the job classifications were, and thus was performing services similar in character to those which he performed before his injury. After the judgment of the Court of Appeal this court decided the case of Lindsey v. Continental Casualty Co., 242 La. 694, 138 So.2d 543, wherein it was recognised that there are divergent views on whether credit should he granted to the employer or insurer for wages paid the employee during the period of total or partial disability, hut that this court considers the sound view to be that credit should be granted when the wage payments are made in lieu of compensation. The basic test for determining whether they are made in lieu of compensation is whether the wages paid after the injury *563 are actually earned. This, of course, is determined by the facts and circumstances of a particular case. The fact that the services performed after the injury are similar, or dissimilar, to the services performed before may be relevant to the question of whether the wages are actually earned, but it is not decisive of it. In the instant case there is no doubt, and the defendant does not contend otherwise, that the wages were fully earned after the injury. The granting of credit was erroneous in this case under the authority of the rule laid down in the Lindsey case.” (Emphasis added by the court.)
It would appear, therefore, that the rule regarding credit for wages paid against compensation due depends upon whether or not the wages are fully earned and are therefore deemed not in lieu of compensation. The converse, of course, is true that where payments are considered to be in lieu of compensation because they are not fully earned, such payments may be credited against compensation due. In the instant case there is no doubt whatsoever but that plaintiff Murphy LaCoste is actually earning each and every dollar paid by his employer. It is equally clear that he is doing exactly the same work in which he was engaged prior to his “accident” and that he receives no aid or assistance from fellow employees. Although he is fully earning his wages, he is entitled to compensation because he is deemed disabled inasmuch as the record establishes by an overwhelming preponderance of evidence that continuation in his chosen line of endeavor is grossly inimical to his health and general physical welfare. While the record establishes that a continuation in this line of work will unquestionably lead to his demise, it is nevertheless a risk which he has undertaken to assume whether out of economic necessity or because of other reasons best known to himself. In any event since he has elected to continue his employment so long as he remains in his former occupation and continues to fully earn his wages, his employer is not entitled to credit for wages paid.
For the reasons hereinabove set forth it is ordered, adjudged and decreed the judgment of the trial court is amended in that judgment is rendered herein dismissing the claim of appellant Barton LaCoste as of non-suit.
It is further ordered, adjudged and decreed that the judgment of the trial court dismissing the claim of appellant Murphy LaCoste be and the same is hereby reversed and set aside and judgment rendered herein in favor of appellant Murphy LaCoste and against defendants, J. Ray McDermott & Co., Inc. and The Travelers Insurance Company, in solido, for workmen’s compensation benefits in the sum of $35.00 per week, not to exceed 400 weeks, commencing June 1, 1964. It is further ordered, adjudged and decreed that all costs of these proceedings be paid by defendants, J. Ray McDermott & Co., Inc. and The Travelers Insurance Company.
Amended in part, reversed in part and rendered.

. This word probably should be “now” rather than “not” in order to make sense. Its position would also so indicate.