158 So.2d 336 (1963)
Herman VEILLION, Plaintiff-Appellee,
v.
KNAPP & EAST, Defendant-Appellant.
No. 980.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
Rehearing Denied December 20, 1963.
Writ Refused January 21, 1964.
*337 Plauche & Stockwell, by Oliver P. Stockwell, Lake Charles, for defendant-appellant.
Baggett & Hawsey by William B. Baggett, Lake Charles, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPER, JJ.
SAVOY, Judge.
This matter is before this Court on an appeal taken by defendant from a judgment of the district court awarding plaintiff total and permanent disability in a workmen's compensation suit. Plaintiff answered the appeal asking for attorney's fees and penalties, and also for the medical expenses of Dr. Charles V. Hatchette who examined the plaintiff for purposes of trial, but did not treat him.
The trial judge has handed down oral reasons for judgment in the instant case. These reasons were transcribed by the court reporter, and we are of the opinion that the district judge has so thoroughly analyzed the facts of this case, that we adopt his opinion as our own, to-wit:
"This suit for workmen's compensation benefits involves the question of whether the plaintiff should be compensated under the statutory provisions for temporary total disability and for a specific loss, or for total and permanent disability.
"It is admitted that the plaintiff, an ironworker, sustained injuries during the course of his hazardous employment with the defendant, Knapp & East, on or about December 17, 1959, and as a consequence he was paid weekly compensation at the rate of $35.00 per week from the date of his accident up to and including October 19, 1962. In addition, all medical expenses incurred by him as a result of his injuries have been paid, with the exception of the bills of Drs. Charles V. Hatchette and Norman P. Morin. These doctors examined the plaintiff at his request, but did not render any treatment.
"At the time of the accident the plaintiff was engaged in fastening an iron or steel beam in connection with the installation of a monorail by Knapp & East at the local plant of Pittsburgh Plate Glass Company. He fell approximately eighteen feet to the ground level, and sustained injuries to his right ankle and heel, as well as injuries to his right wrist, and possibly his back.
"The medical evidence indicates that by the first part of October, 1962, he had recovered from all of his injuries except those sustained to his right foot. The three orthopedists who testified in this case, Dr. Jerome W. Ambrister, the attending physician, and Drs. Hatchette and Morin, were generally in accord that the plaintiff had sustained a fracture of the os calcis of his right foot, which involved the subtalar joint of the ankle. The fracture had healed, but because of the involvement of the subtalar joint the plaintiff, in the physicians' opinions, sustained a permanent disability of the foot of approximately 25%. The doctors also agreed that such involvement could give rise to an arthritic condition of the joint. However, Dr. Ambrister felt that in a period of approximately three years from the injury the pain in the plaintiff's right foot should disappear. The other two physicians felt that the condition of his ankle would become worse as time went by.
"Both Dr. Hatchette and Dr. Morin were of the opinion that the plaintiff was, at the time of their examinations and is now, permanently disabled from performing his *338 former duties as an ironworker insofar as they involve climbing, walking on uneven surfaces and prolonged standing. I believe Dr. Hatchette also expressed the opinion that with such a foot the plaintiff should not climb ladders with rungs. On the other hand, Dr. Ambrister was of the opinion that the plaintiff could resume all of the duties of his former employment as he was under the impression that such work did not necessitate walking on uneven surfaces. Dr. Ambrister, of course, acknowledged that the plaintiff would suffer pain in walking on uneven surfaces, although, as I say, he understood that Mr. Veillon was not required to do this in his work.
"The lay witnesses who testified on behalf of plaintiff, who were primarily his coworkers and the business agent of his union, testified that a great percentage of an ironworker's duties involved `climbing', and that a person with a foot which causes him pain should not engage in this activity. On the other hand, the lay witnesses who testified for the defendant expressed the opinion that at the present time there is very little climbing involved in an ironworker's duties and many of them do not climb at all.
"The difference between the witnesses for either side on this point seems to have been based primarily on their interpretations of the word `climbing'. As I understood the plaintiff's witnesses, they used the word `climbing' to mean all the work that an ironworker is required to do above the level of the ground and not just the steps taken in either climbing a ladder or climbing a vertical beam to get to such work; whereas, the witnesses for the defendant used the word `climbing" to mean only the actual physical operation of climbing from one level to another. This difference of interpretation, and also the varied types of construction in which ironworkers are engaged on different jobs, certainly could give rise to an honest difference of opinion as to just what duties an ironworker is called upon to perform, and what duties constitute a substantial part of his occupation.
"Now, as I appreciate the law, and I quote from Anderson v. Continental Can Company, 141 So.2d 48, a Second Circuit Court of Appeal decision, `The jurisprudence is clear that unless the employee is physically able to resume the type of work he was doing at the time of the injuries, he is disabled within the contemplation of the Workmen's Compensation Act. It does not suffice that he is able to resume an entirely different type of work even though in such employment he might earn greater wages. (Citing cases.)
"`It is also well settled that an injured employee is not required or expected to resume his work if same can only be done in great pain or suffering; and that if such work can only be performed under such conditions of pain, he is likewise disabled within the contemplation of the Workmen's Compensation Act. (Again citing authority.)
"`Where the employee was engaged in work at the time of his injury which consisted of multiple duties, the question of whether the injuries resulted in total and permanent disability must be decided by determining whether he can return to work and perform substantially all of such duties. If there are some duties incidental to his employment that he is unable to perform, the court must then decide whether such duties were a substantial part of his employment.' (Citing authorities.)
"In addition, it is well recognized in our jurisprudence that if, because of his injuries and disability, an employee is exposed to a greater danger in his work than would otherwise be the case, he is entitled to workmen's compensation because of such disability. Also, where an employee is handicapped to the extent that he would be prejudiced in his right and ability to compete in the labor market, then he is disabled within the meaning of such term in our Workmen's Compensation Act.
"In this case it is clear that Mr. Veillon performed work as an ironworker for several *339 different employers subsequent to this accident. It is also clear that so far as these employers were concerned his work was done satisfactorily. However, it was established that the plaintiff did little, if any, work above the ground following the accident. In other words, all of the work that he performed as an ironworker subsequent to the accident was layout work and tieing rods, or other work that did not take him up on beams or call for him to climb ladders, with the possible exception of a job he had at Longville where for a short time he climbed a few steps and worked on a platform.
"Mr. Veillon, his fellow workers and his wife testified that at times while performing this work he complained of pain in his foot and that on occasions his right foot would swell. I believe one or possibly two of defendant's witnesses testified that they knew that the plaintiff had sustained an injury to his foot, and that when he was engaged in jobs with which they were connected that it was recognized that his work would be done on the ground.
"So the principal questions presented to this Court for determination are whether or not the condition in Mr. Veillon's ankle is such as would prevent him from performing the duties of an ironworker above the ground and, if so, whether or not those duties constituted a substantial part of his occupation as an ironworker.
"I do not think there is much question but that work above the ground, as distinguished from actual climbing, occupies a substantial portion of an ironworker's time, and that he certainly is called upon, or ironworkers generally are called upon, to spend considerable time in connection with steel work above the ground. Mr. Smiley, the defendant's witness, testified, as I recall, that over half of an ironworker's duties are performed above the ground level. It was established that in this day and time ladders are provided to get them up there in some casesprobably more often than not. However, after they do get above the ground, whether it's six feet, eight feet, or whatever is the height of a one-story building, or even higher, the ironworkers are required to walk and stand on beams and to work with their feet on the bottom flange of horizontal beams. They are required to balance themselves on these beams, and while the surface may be smooth, this certainly causes pressure to be placed on either side of their feet. Thus, maintaining balance would cause some eversion or inversion movement with respect to the ankle, as I understand the doctors' use of such term.
"Consequently, the Court concludes it has been established in this case that a substantial part of an ironworker's duties requires him to assume a position above the ground, walking and climbing on beams which call for something more than just ordinary walking on straight and level surfaces. Most of the defendant's witnesses testified they would expect an ironworker to perform the major portion of an ironworker's duties. While it is true a lot of ironworkers are on the ground all or a great portion of the time, nevertheless, it is obvious to the Court that if an ironworker is unable at any time to take a position above the ground and stand, walk or climb on a beam, he would experience difficulty in competing for employment in the labor market.
"I think even Dr. Ambrister would acknowledge that if the plaintiff in this case was required to place his feet on flanges and balance himself on beams, he would be disabled to some extent in performing his work. Certainly, such pressure would cause him pain, and under the law an employee is not obliged to perform his duties in pain. Of course, both Dr. Morin and Dr. Hatchette expressed the unqualified opinion that this plaintiff could not do this work without pain or increased danger. And Dr. Hatchette said he did not think Veillon could even climb ladders with rungs without some pain.
*340 "The Court therefore concludes the preponderance of medical testimony is to the effect that the plaintiff cannot perform the duties of an ironworker above the ground without some degree of pain and without some extra hazard to himself and his fellow workers.
"I can readily understand how an employer, who finds an employee, to whom he is paying workmen's compensation, working on another job as an ironworker without any restrictions so far as his job referral is concerned, would find it hard to understand why he should continue to pay such a man workmen's compensation. This is particularly true inasmuch as compensation, in principle, is supposed to cover a loss of earnings resulting to an employee during the time of his disability, and charge such loss to industry as an ordinary business expense. It is not necessarily designed to make him whole again. Its original purpose was simply to offset the employee's loss of earnings to some degree, and provide him an income until he could return to work. However, our appellate courts have taken a somewhat different view in this type of case, and this Court is obliged to follow the jurisprudence, regardless of its own views as to whether it is right or wrong to require an employer to pay compensation to an employee for an injury when in fact he is engaged in the same type of work at a greater wage. Certainly, the law is clear under our jurisprudence that if a worker is obliged to perform his duties with pain, or increased hazard to himself or his co-workers, he is totally disabled within the meaning of the Workmen's Compensation Act.
"Consequently, the Court concludes that the plaintiff in this instance has proved his case with the required degree of certainty, and that he is entitled to judgment herein for workmen's compensation for total and permanent disability, subject to a credit in favor of defendant for the workmen's compensation and medical expenses paid.
"The claim with respect to penalties is denied. The evidence established that workmen's compensation was terminated on the basis of a medical report from the attending physician which reflected his opinion that the plaintiff should be able to return to his previous employment. Under the jurisprudence this is a valid reason for termination of compensation in the absence of any other factors. Plaintiff's contention that penalties should be imposed because of failure to promptly furnish medical reports actually goes beyond the pleadings and, under the circumstances, whether he is right or wrong in this respect the Court is not called upon to pass on this particular point.
"For these reasons there will be judgment herein in favor of the plaintiff, Herman Veillon, and against the defendant, Knapp & East, for workmen's compensation at the rate of $35.00 per week, beginning December 17, 1959, to continue during the period of plaintiff's total disability, but not to exceed 400 weeks, less the workmen's compensation previously paid, together with legal interest on all past due installments until paid, and for all costs of this proceeding.
"The plaintiff's demands for the medical fees of Drs. Morin and Hatchette are denied inasmuch as it was not established that either of these physicians furnished any treatment in connection with this case.
"Plaintiff's rights are reserved to claim any medical expenses that are reasonable and necessary for treatment in the future, but not to exceed the statutory maximum."
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.