ELLIS, Judge.
Appellants have appealed from a judgment awarding appellee compensation at the rate of $35.00 per week for 400 weeks for a back injury as the result of an alleged accident on August 28, 1961, when plaintiff stated he slipped while climbing over a motor. Appellee alleged “that his injury had been medically described in part as a lumbo-sacral sprain with possible inter-vertebral disc damage and resulting nerve root damage to his legs.”
The plaintiff described the accident as occurring when he stepped over a motor in the aisle of a barge, when he lost his footing and slipped and “I reached back to catch a beam behind me and I heard my back pop and it hurt me at the instant and after awhile it kind of passed.” He then told his “buddy” with whom he was working and the next day he reported the accident to the foreman and he continued to work for four or five days and then went back to the foreman and told him he thought he ought lo go to a doctor, that his back was still bothering him, so they sent him to Dr. Kety. The plaintiff when asked what was wrong with his back testified he could not ride in an automobile and that every time he did and hit a bump or “anything I would hit would hurt me awful, which it still do. My leg was hurting, left leg and still hurts.”
This case was tried on March 4th, 1963 which was some two and a half years after the occurrence of the alleged accident. However, plaintiff frankly testified that his leg had not begun to hurt him until two months or a month and a half after “I got hurt.” The plaintiff worked for seven or eight months after his alleged accident but during this time was being seen by doctors which will be hereinafter discussed. He testified that he was in pain doing his work and when he did quit he went to the office and told his employers that he could not stand the pain any longer. He also testified he had worked this long with pain because he had a wife and three children to support. Several months before the trial he stated he went back to try to get work with the defendant, Equitable Equipment Company, Inc., although he stated his back was still hurting, and he was told he had been “laid off”. He went back to work approximately five weeks prior to the trial of the case for Independent Exploration Company who were engaged in some seismograph work. Plaintiff testified this latter work was as hard physically as the work he had been doing when he had suffered his accident except that he had to walk a lot which caused his leg and back to pain him a great deal. Plaintiff also testified he went back to work the last time on account of his family, and also stated he had no trouble with his back before the alleged accident.
Four doctors testified, viz., Dr. J. H. Kety (a general practitioner and plaintiff’s treating physician); Dr. Rufus H. Alldredge, orthopedist; Dr. Richard W. Levy, neurosurgeon; and Dr. Edward Haslam, orthopedist.
Dr. Kety testified that he had made an examination of the plaintiff shortly after his alleged accident and found some muscle spasm in the lumbar sacral area but there were no neurological findings with the extension of pain down the leg, or anything. The pain was all confined to tenderness over the right lumbar sacral joint. His diagnosis was lumbo-sacral strain.. He saw plaintiff four times within ten days from *455 the date of the accident and after his first examination and the detection of muscle spasm he stated that this decreased on each subsequent visit so that on the third visit he found virtually none at all and on the fourth and final visit all signs of muscle spasm had disappeared. He found absolutely no objective reasons for the plaintiff’s complaint, “yet he was complaining much more bitterly than when he first saw me.” On his last visit “ * * * There were no physical findings whatsoever at this time.” He further stated that after the first visit he never saw any objective evidence “In fact his complaints were so bizarre and so not in keeping with the physical examination that I referred him to an orthopedic specialist in New Orleans at that time.” He did, however, see the plaintiff after this and recommended physical therapy intermittently, but he never did consider him too disabled to perform the duties of his job. He was definitely of the opinion that the plaintiff had completely recovered from any injury he might have had at the end of the first week in September but that the injury never disabled him from continuing his work. Dr. Kety, after the fourth visit, stated that he refused to treat the plaintiff when he would come to see him because he said he could not treat something “that’s not there, so I would just, when he came back in and complained again, I sent him back on in to Alldredge and Riordan.”
Approximately one month following his injury plaintiff was referred to Dr. All-dredge by Dr. Kety. Dr. Alldredge saw plaintiff on four occasions, the first being September 20, 1961, found no muscle spasm and considered plaintiff’s condition to be not serious. On November 10, 1961 and February 5, 1962 Dr. Alldredge again saw and completely examined plaintiff and the findings on these two occasions were essentially the same. He found no muscle spasm, no tenderness of the lumbo sacral region, no evidence of sciatic nerve involvement, no changes in reflexes and no limitation of straight leg raising. In short, he found no change from his first examination. He did not consider plaintiff disabled. On June 4, 1962 Dr. Alldredge saw plaintiff for the last time, and on this occasion at the request of plaintiff’s then attorney. The result of this last examination was the same as those previous. There were no objective symptoms noted and plaintiff was considered able to resume his former employment. He expressed the positive opinion that he never considered plaintiff disabled.
Dr. Richard Levy, neurosurgeon, examined plaintiff April 6, 1962 for possible disc or nerve involvement and his tests in this regard proved absolutely negative.
Dr. Edward T. Haslam, orthopedist, saw and examined plaintiff on one occasion only, viz., Nov. 5, 1962. In essence Dr. Haslam stated he found evidence of muscle spasm, as well as tenderness of the affecte'd area, and in addition straight leg tests resulted in some pain. He considered plaintiff disabled from pain. He further noted the difference in leg measurements in that plaintiff’s right leg was found to be approximately one-half inch shorter than the left. This condition, Dr. Haslam felt, could produce irritation of the back. He further acknowledged that this discrepancy in leg length could possibly be the cause of plaintiff’s complaint independently of the accident, although he felt plaintiff’s condition primarily stemmed from the injury suffered.
Dr. Alldredge, who did not note the difference in leg measurements in his examination, agreed that if plaintiff were in fact suffering pain, this anatomical anomaly could well be the cause thereof. Dr. All-dredge did not associate either the condition of the plaintiff’s legs or the back pain to the accident itself and was positive in the belief that any disability plaintiff sustained as the result of the accident had ceased as of the date he last examined plaintiff.
Of further significance is the fact that plaintiff has worked continuously since the accident except for a short length of time and has sought no further treatment since his last visit to Dr. Alldredge on August *456 4, 1962. It would appear his complaints of disabling pain are inconsistent with his failure to seek medical treatment in alleviation thereof. Moreover, plaintiff frankly admits that he refused to wear a corrective lift on his right shoe as recommended by Dr. Haslam and also conceded he rejected the medical recommendation that he sleep on a hard bed. His testimony in this latter regard shows that he tried such a suggestion only two nights and failing to obtain relief in this time, resumed sleeping on an ordinary bed. We believe the medical testimony overwhelmingly preponderates in favor of the conclusion that plaintiff has failed to establish his case to that degree of certainty required by law. Granting that the testimony of Dr. Haslam (a specialist) outweighs that of Dr. Kety (a general practitioner) we also have the testimony of another specialist, Dr. Alldredge, whose qualifications are equal to those of Dr. Haslam. Dr. Alldredge’s testimony is diametrically opposed to that of Dr. Haslam, and we believe is entitled to greater weight considering they are both specialists in the same field, as Dr. Alldredge saw plaintiff on four occasions between September 20, 1961 and June 4, 1962, whereas Dr. Haslam examined plaintiff only on one occasion and that for the purpose only of evaluation. In addition there is the further medical evidence of Dr. Levy to the effect he found no nerve or disc involvement which would justify plaintiff’s complaints. While we are not expressing any firm opinion as to the cause of plaintiff’s continued complaints, it would appear more reasonable that such pains were stemming from the fact that one leg was shorter than the other. There is no testimony that his accident irritated the natural results that many times stem from a difference in the length of one’s legs. There was a medical opinion expressed that such a condition could be the primary cause of plaintiff’s complaints.
For the above and foregoing reasons the judgment of the lower court is reversed and plaintiff’s suit dismissed at his cost.
Reversed.