REID, Judge.
This is an action brought by the plaintiff Hampton S. Bankston under the Workmen’s Compensation Act of Louisiana and presents to this Court the sole question of the presence or absence of continuing disability on the part of the plaintiff under the meaning of the Act. There is no dispute as to the facts concerning the accident, nor is it disputed that plaintiff lost very little time from work as a result of the accident. The accident occurred on January 24, 1964. The plaintiff first consulted Dr. Richard B. Means, an orthopedic surgeon, on January 30, 1964, at which time Dr. Means hospitalized the plaintiff and placed him in traction where he remained until approximately February 4, 1964. The record shows that from that date the plaintiff had worked for the defendant for four days and subsequently for other employers as a pipe fitter. The case was tried on the question of disability and for written reasons rendered on September 21, 1965, a judgment was read and signed September 24, 1965, dismissing plaintiff’s suit at his cost, from which judgment plaintiff has appealed.
The two main issues to be discussed in this case are (1) whether or not plaintiff should recover for total and permanent disability, subject to the right of defendant to reopen the case, as provided by law, and (2) alternatively whether or not plaintiff would be entitled to compensation from March 11, 1964 until May 26, 1964. It is undisputed that plaintiff was paid workmen’s compensation for the period January 30, 1964 through March 11, 1964.
Regarding the question of total disability, the plaintiff relies primarily upon the testimony of Dr. Edward T. Haslam, an orthopedic surgeon, and on lay testimony, contending that the preponderance of the evidence was to the effect that plaintiff could not return to the type work he was doing when injured without suffering substantial pain. This question is very ably covered by the trial Judge in his written reasons for judgment and we take the liberty of quoting the same in full.
“Plaintiff, sometimes hereinafter referred to as Bankston, brings this suit to recover workmen’s compensation during his disability not to exceed 400 weeks on his contention that he continues to experience pain to a disabling degree as the result of an accident which he experienced while in the employ of the defendant, H. E. Weise, Inc., on January 24, 1964 as a pipe-fitter. There is no dispute between the parties litigant as to the actual occurrence of an accident. The evidence clearly establishes that Bankston suffered an accident with a resultant sprain of his lumbo-sacral area while he was in the process of lifting either one or two tool chests from one position onto a cabinet. Bankston initially consulted Dr. Richard *487 B. Means, Baton Rouge, La., a specialist in the field of orthopedics, on January 30, 1964, when he was hospitalized and placed in traction for a period of five days. Almost since the onset of the accident Bankston has continued to be employed with the exception of his period of hospitalization. On the occasion of his initial contact with Dr. Means, he performed a complete neurological examination, which, according to this physician, negated any nerve root involvement or what is usually termed as a ruptured or herniated disc injury. Dr. Means did, however, note muscle spasm in Bankston’s back, and he diagnosed plaintiff’s condition as an acute sprain of the lumbo-sacral area. Even though Bankston continued to work as a pipe-fitter or a supervisor after his release from the hospital, he was not discharged by Dr. Means as being able to resume his former duties until February 13, 1964, at which time the physician prescribed a back brace, and opined that plaintiff could return to work. It was not until April 3 that Dr. Means told Banks-ton he could discard the brace. It is agreed by counsel plaintiff was paid workmen’s compensation through March 11, 1964.
“Able counsel for plaintiff contends that Dr. Means erroneously appraised his client’s condition in that as late as May 26, 1964 he referred Bankston to Dr. Starns, general practitioner of Holden, La., with the statement ‘This man has a back sprain could you give him some ultrasound treatments ?’ Counsel, in support of this position, points to the testimony of Dr. Edward T. Haslam, New Orleans, La., with respect to his initial and only examination of plaintiff on June 16, 1964 at which time this orthopedic specialist found the plaintiff to be experiencing muscle spasms in his back and positive reactions to certain recognized tests for determining the probability of a ruptured disc. This physician, while not directly diagnosing a disc herniation, strongly suggests the probability of same, and further stated he believed the plaintiff to exhibit a physical condition which would not permit him to perform strenuous and hard physical work without substantial pain irrespective of whether or not there was nerve root involvement. This physician attached no particular significance to the fact that Dr. Means had been unable to detect these symptoms since January 30, 1965 on the several occasions Dr. Means had examined Bank-ston. He explained this by saying these symptoms may not have appeared when Dr. Means saw Bankston because it was possible the condition which would cause the manifestation of symptoms could have been in remission.
“Bankston also urges that though he has continued to work almost uninterruptedly since his qualified discharge by Dr. Means, the only way he has managed to hold his jobs is because he has either been aided by his fellow employees in escaping the more arduous tasks usually required of a pipefitter, or, as in the case of his most recent job, he has held a supervisory position which is not so physically exacting.
“The evidence shows Bankston had previously experienced accidents in the course of his employment in 1946, 1960 and perhaps in 1963 which caused injuries temporarily disabling, and required him to cease working for relatively short periods of time. The proof here reflects that plaintiff had completely recovered from such residuals as he experienced in these episodes prior to the accident of January 24, 1964.
“The principle expressed in Robertson v. Great American Indemnity Company, [La.App.], 136 So.2d 550, Veillion v. Knapp & East [La.App.], 158 So.2d 336, and numerous other cases of like import, holding that a workmen’s compensation claimant is entitled to the benefits provided by the workmen’s compensation act where, even though he returns to his former occupation, he does so only by *488 enduring substantial or appreciable pain, still represents the clear and unquestioned basic law of this state. As a counterpart of this precept is the equally accepted tenet set forth in such cases as Hebert v. Your Food Processing & Warehouse Company [La.App.], 170 So.2d 765, and Lavergne v. Southern Farm Bureau Casualty Insurance Company, [La.App.], 171 So.2d 751 that, where an employee after accidental injury is able to resume his former occupation and perform the usual tasks of his job with only superficial, minor or trivial aches and pains ‘to which all flesh is heir’, he is not considered as disabled within the intendment of the Workmen’s Compensation Law. (Emphasis supplied by author)
"Counsel for plaintiff urges that the testimony of Dr. Edward T. Haslam is entitled to more credence and greater weight than the testimony of Dr. Means for the apparent reason that the former physician’s findings on his initial and only examination of plaintiff on June 16, 1964 more reasonably support Dr. Haslam’s conclusion that the plaintiff continued to fee disabled than is Dr. Means’ conclusion of recovery on February 13, 1964 supported by his examinations and findings, where as late as May 26, 1964, Dr. Means was alluding to Bankston’s back sprain, requiring additional medical attention in the form of ultrasonic sound treatments, in connection with his referring claimant to Dr. Starns. It must be borne in mind that Dr. Means was plaintiff’s choice as his treating physician, and that he continued to see Bankston 12 or 14 times, the occasion of the last visit and professional contact being in January, 1965. Counsel for plaintiff finds himself in the rather unenviable position of being constrained to at least contradict the conclusion of his primary expert witness. As a matter of fact with some trepidation as to the propriety of same, the Court permitted the re-opening of the case in order to permit counsel to present the note located subsequent to the trial from Dr. Means to Dr. Starns, which according to plaintiff, would in essence obliterate and render nugatory the conclusion as reflected by the testimony of Dr. Means that plaintiff had recovered on February 13, 1964. In a somewhat less spirited manner the question is raised about Dr. Means failing to give Bankston a complete neurological examination except on the occasion of the first visit on January 30, 1964. Neither of these contentions can be accepted as detracting from the probative effect of Dr. Means’ testimony. The mere suggestion of continued conservative treatment of the sort prescribed by Dr. Means to Dr. Starns on May 26, 1964 does not denote in itself the condition was, in the opinion of Dr. Means, still disabling. With respect to the second contention levelled at a claim failure on the part of Dr. Means to perform a complete neurological examination of Bankston except on only the one occasion, Dr. Means testified repeatedly that all of the tests for nerve root involvement were within normal limits, that in his opinion the plaintiff was not suffering from a ruptured or herniated disc injury, and while he discovered on this first examination muscle spasm in the low or lumbosacral area of plaintiff’s back, resulting in his diagnosis of an acute sprain of the lumbo-sacral region, he did not at any time subsequently observe muscle spasm. We think it is elemental that should there have been muscle spasm in plaintiff’s back subsequent to this first visit, there would have been no reason for Dr. Means not to have discovered some during the course of his numerous examinations. We understand that muscle spasm is an outward manifestation readily observable.
“The law is fairly clear that the testimony of an attending and treating physician is to be given more weight than that of a physician who sees and examines a claimant infrequently, and, as in this case, only on one occasion, especially where the physicians in question occupy the position of specialists in the particular *489 field of medicine. Both Drs. Means and Haslam are recognized as able and competent practitioners in the field of orthopedics.
“There is no reason to resort to the lay testimony for in the opinion of the Court eh medical testimony preponderates to the effect that the plaintiff from a legal standpoint had recovered from the injuries he sustained, and that he was able to resume his occupation and perform substantially the same duties of a pipe-fitter as had been required of him before the accident, and without substantial pain.
“The plaintiff’s suit will be dismissed at his cost.
“Submitted at Hammond, Louisiana on this 6th day of September, 1965.”
After careful examination of the record we do not feel that the Trial Judge was in error in holding that the plainiff was not entitled to recover for permanent and total disability.
The plaintiff makes much of the fact that the Trial Judge was in error in relying upon the fact that plaintiff initially went to Dr. Means of his own choice and the fact that Dr. Haslam only saw Mr. Bankston on one occasion. While it does seem the Trial Judge may have been influenced by these facts, an examination of the record shows that these were merely factors taken into ■consideration with other circumstances. In this regard we point out the holding of this Court in Pinion v. Equitable Equipment Company, La.App., 167 So.2d 453, where in a similar situation it was held:
“ * * * Granting that the testimony of Dr. Haslam (a specialist) outweighs that of Dr. Kety (a general practitioner) we also have the testimony of another specialist, Dr. Alldredge, whose qualifications are equal to those of Dr. Haslam. Dr. Alldredge’s testimony is diametrically opposed to that of Dr. Haslam, and we believe is entitled to greater weight considering they are both -specialists in the same field, as Dr. Alldredge saw plaintiff on four occasions between September 20p 1961 and June 4, 1962, whereas Dr. ITas-lam examined plaintiff only on one occasion and that for the purpose only of evaluation. * * * ”
While this Court is by no means implying that in all cases continuing treatment by one physician should outweigh a singular evaluation by another, it is nevertheless a principle which should be given weight when taken into consideration with other factors.
This Court does not feel that the Trial Court was manifestly in error in its evaluation of the weight to be given the lay testimony. Although not set forth in the Trial Judge’s reasons for judgment, there is no doubt that the record shows that the plaintiff not only could, but he did perform work substantially as before his injury.
Regarding the question of whether or not plaintiff would be entitled to compensation from March 11, 1964 to May 26, 1964, the facts are as follows.
Although Dr. Means testified that he saw Mr. Bankston on February 13, 1964 and prescribed a back support for him and told him to return to work, counsel for plaintiff contends that Dr. Means’ deposition clearly shows that the plaintiff was disabled within the meaning of the Workmen’s Compensation Act until May 26, 1964, and" quotes Dr. Means as follows:
“Q. That’s right. Between February 13 and April 3rd, was it. your opinion that this man would suffer substantial pain if he tried to work without the corset?
A. Well, the primary reason for prescribing the corset was not for the relief of pain. He wasn’t having particular pain. Of course, he might have if he hand’t worn it I prescribed that primarily to protect his back and allow it to heaL *490 He could have had severe pain if he had not worn the corset.
Q. That’s right. Now, between April 3rd and May 26th when you said he could go back to work without the corset, but you had not as yet felt that he was completely recovered, is it your opinion that doing the work of a pipefitter would have caused him any pain?
A. During that time, he would likely have had some pain if he had done strenuous work.”
Counsel for plaintiff also contends that counsel for the defendants conceded this point and in support of this position cites 'the transcript of this case wherein counsel 'for the defendants, in objecting to a question propounded 'to a co-worker concerning a conversation which took place in February of-1964, said:
“MR. WALTERS: I object on the basis that anything said would be hearsay and for that reason I offer this objection toward any conversation occuring in February of 1964 when the compensation benefits were being paid, as being irrelevant and immaterial. The issue to be determined by the Court is whether Mr. Bankston was disabled after May, 1964. There are two reasons for it, first, the statement of the man Crowson would be hearsay, secondly, it would be irrelevant as to whether Mr. Bankston was disabled after May of 1964 which point we concede from Dr. Means’ testimony.”
In answer to this contention defendants cite the principle followed by the Courts of Appeal and the Supreme Court to the effect that substantial pain is required, and something more than ordinary discomfort and aches and pains to which all flesh is heir is necessary in order to evoke the working-in-pain rule, and cite the following from Beaugez v. Liberty Mutual Insurance Company, La.App., 173 So.2d 869, 4th Cir.1965:
“ * * * The pain must be substantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job or, where the pain is not so intense as to hinder the worker’s fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health * *
Counsel for defendants then concludes that the record in this case does not substantiate the conclusion that plaintiff was working in substantial pain following the accident and, therefore, the Trial Judge’s conclusion in this regard is eminently correct.
Although the Trial Judge did not specifically discuss partial disability, nor did he appear to consider the question raised by Mr. Walter’s objection, it is clear that the Trial Judge did not feel the plaintiff was enduring substantial or appreciable pain which would entitle him to recover to any extent under the Workmen’s Compensation Act.
This Court cannot agree with this latter finding of the Trial Court. It is clear that if we are to accept Dr. Means’ testimony, it should be accepted in its entirety and we cannot see how the testimony quoted above concerning the period from February until May 24 can be construed to show that during that period the plaintiff was not disabled to such a degree that he could not perform the services of a pipe fitter in the same manner as before the accident. True, as the defendants contend, Dr. Means stated the plaintiff wasn’t having any particular pain, but he nevertheless prescribed the corset in order for plaintiff’s back to heal and in order that he would not suffer severe pain. This clearly indicates the plaintiff was not fully recovered and able to do work of the same caliber as before the accident. Also, although the objection by Mr. Walter is not absolutely clear, its intent is clear— that Mr. Walter apparently conceded the defendant was disabled through May of 1964 for he stated that “the issue to be determined by this Court is whether Mr. Bankston was disabled after May 1964,” *491 not whether Mr. Bankston was disabled after February of 1964.
It is, therefore, the opinion of this Court that the judgment of the Trial Court should be amended and that plaintiff should be entitled to judgment for compensation at the rate of $35.00 per week for the period March 11, 1964 through May 26, 1964, and for all costs of these proceedings.
For the above and foregoing reasons the judgment of the Trial Court is amended and affirmed.
Amended and affirmed.