CULPEPPER, Judge.
Plaintiff seeks workmen’s compensation benefits for total and permanent disability. Defendant is the employer. The district judge awarded benefits for temporary total disability. Plaintiff appealed. Defendant also appealed, contending that no benefits whatever should be paid.
The substantial issues on appeal are: (1) The occurrence of a work-connected accident on Friday, March 20, 1964. (2) Causal connection between that accident and a herniated intervertebral disc which was surgically removed on September 18, 1967. (3) The number of weekly benefits due. (4) Whether two items in the bill submitted by Dr. Faludi should have been allowed as medical expense for treatment.
THE ACCIDENT
In 1964 plaintiff was working as a sawyer for the defendant, Roy O. Martin Lumber Company, Inc. He contends that at about 7:30 a. m. on Friday, March 20, 1964, he was lifting a heavy band saw, weighing about 150 pounds, when he injured his back. He did not complain at the time to his fellow employees, made no report on that Friday of the accident and continued to work the rest of the day.
On the following Monday, March 23, 1964, he reported the accident to his employer’s safety director, Mr. Haywood Nutt, who sent plaintiff to the company physician, Dr. H. Lamar Boese. This physician diagnosed a lumbar sprain or strain. He admitted plaintiff to the hospital on March 31, 1964 for a period of three days, during which treatment consisted of traction and drugs for pain. On his release, plaintiff was fitted with a back brace and told that he could return to work, which he did. Dr. Boese saw plaintiff again on April 9 and found that he had full motion and could continue to work.
Defendant contends the accident has not been proved because plaintiff is the only witness to the occurrence, said nothing to his co-employees at the time and made no report to his employer for three days. Also, plaintiff first told Dr. Boese that he had hurt his back two weeks before and at one time told Mr. Nutt that he had hurt his back while handling an icebox on a fishing trip.
It is a close issue, but ultimately we find no manifest error in the trial judge’s conclusion that the accident was proved. The judge points out, in his written opinion, that plaintiff’s testimony as to the accident is corroborated by the facts that within three days he did report the accident and the doctor actually found a back injury which was consistent with the facts of the alleged accident. Furthermore, from the date of this accident in 1964, plaintiff continued periodically to complain of pain in his back and consistently said that the trouble originated with the accident at Martin’s in 1964.
CAUSAL CONNECTION BETWEEN THE 1964 ACCIDENT AND THE 1967 DISC
The facts show that plaintiff continued to work as a sawyer for Martin *3 Lumber Company until June 4, 1964. Then he left Martin and obtained employment with Riverland Hardwood Company in Simmesport, Louisiana, for higher wages, but had to drive a round-trip distance of about 100 miles a day from Alexandria. Plaintiff worked for Riverland as a sawyer for three years. In addition, he even worked extra hours occasionally at smaller mills. All of the witnesses testified that he was one of the best sawyers they had ever seen. However, during this period of time he did complain to his co-employees on occasion that his back hurt and that he had received an injury while working for Roy O. Martin Lumber Company.
In July of 1967, plaintiff left Riverland and went to work as a sawyer for Rogers Bros. Lumber Company in Ferriday, Louisiana, which employment necessitated a round trip of about 140 miles per day from Alexandria. He worked for Rogers Bros, for only about two months and then suffered a “flare-up” of his back condition which ultimately led to the surgical removal of the disc in September of 1967.
Between the time of the 1964 accident and the 1967 surgery, plaintiff was seen by several doctors. As stated above, the initial treating physician, Dr. Boese, found only a lumbar strain and released plaintiff for return to work. In August of 1964, plaintiff was examined by Dr. Ford J. MacPherson, an orthopedist of Shreveport, who diagnosed “History suggestive of minimal ruptured disc * * * but he has no objective findings whatever to support his contention.” In July of 1965, plaintiff was seen by Dr. P. M. Davis, an orthopedic surgeon of Alexandria, who diagnosed a chronic lumbosacral strain but no symptoms to suggest a ruptured disc.
On May 11, 1966, plaintiff was first seen by Dr. Heinz K. Faludi, a neurosurgeon of Shreveport, who, on that occasion, suspected a slight herniation of a disc not yet manifest, but actually diagnosed only a lumbosacral strain. About one year later, on September 8, 1967, Dr. Faludi reexamined plaintiff and found sufficient evidence of nerve root involvement to indicate a ruptured disc. He performed a myelogram, interpreted as showing a herniated disc, which he surgically removed on September 18, 1967. Based on the condition he found during surgery and plaintiff’s medical history since the 1964 accident, Dr. Faludi expressed the opinion there was a causal connection between the accident and the disc which manifested itself in 1967.
The defendant makes a strong argument that Drs. Boese, MacPherson and Davis, who had examined the plaintiff during the intervening period between 1964 and 1967 had concluded there was no disc. Defendant also points out that plaintiff had worked as a sawyer for all this period of time and that the accident could have been caused in many other ways.
This also is a close question but we find no manifest error in the trial judge’s conclusion that there was a causal connection between the 1964 accident and the disc which was removed in 1967. Both the lay and medical testimony show that beginning with the 1964 accident plaintiff did suffer at least intermittent pain and discomfort. Dr. Faludi’s testimony is very impressive. It was his opinion that the accident in 1964 probably stretched and weakened the ligaments surrounding the disc which became progressively worse until the disc herniated and completely degenerated by 1967.
COMPENSATION BENEFITS DUE
The trial judge awarded weekly compensation benefits beginning September 9, 1967, when plaintiff left his employment with Rogers Bros. Lumber Company, and ending June 24, 1968, which is the time at which Dr. Faludi was of the opinion plaintiff could return to his work as a sawyer. Plaintiff contends he is totally and permanently disabled.
*4 Plaintiff makes a strong argument that since he continued to work in substantial pain, from the time of the accident until he left Rogers Bros. Lumber Company about three years later, he is entitled to workmen’s compensation benefits from the date of the accident. Veillion v. Knapp & East, La.App., 158 So.2d 336 (3rd Cir.1963). The trial judge rejected this argument. He found as a fact that although plaintiff did have periods of discomfort at work, he performed his job in an excellent manner, working nine and ten hours a day in addition to traveling long distances to work. We think the record supports this conclusion.
Dr. Faludi, the physician who actually performed the surgery, was of the opinion that as of January 10, 1968 plaintiff could return to light work, lifting no more than 50 pounds, and that by June 24, 1968 he could return to full duty. This physician estimated a disability of 12% of the back, due to the removal of the disc, but was of the opinion plaintiff could return to work as a sawyer. A sawyer does not perform heavy manual labor. He sits most of the time and works levers and buttons which control the saws that cut the logs.
Plaintiff contends that since the work of a sawyer at the time of the accident in 1964 included lifting heavy band saws, he is disabled because he can no longer lift these heavy objects. But the evidence shows sawyers are no longer required to lift these saws. This work is now done by helpers.
Plaintiff introduced the testimony of Dr. Donald W. Irby, a neurosurgeon of Monroe, who examined plaintiff shortly before the trial in 1968 and expressed the opinion he could not return to the work of a sawyer. The trial judge found Dr. Irby’s testimony unimpressive and concluded it did not outweigh that of Dr. Faludi. With this we agree.
MEDICAL EXPENSE
The final question concerns two items of Dr. Faludi’s bill of $675 for medical treatment. The first is an item of $35 for “consultation” on May 11, 1967. Defendant contends this was merely a consultation for the purposes of a report to plaintiff’s counsel, had nothing to do with the treatment and is therefore not recoverable as medical expense under LSA-R.S. 23:1203. See Langley v. Travelers Insurance Company, La.App., 159 So.2d 553. Dr. Faludi actually saw plaintiff on that occasion because on that same date, May 11, 1967, there is also a charge for x-rays in the sum of $30. This consultation and x-rays were undoubtedly used for diagnosis of the disc. Under the circumstances, we think it is reasonable to conclude that this does have a connection with treatment and is recoverable as medical expense.
The second item in question is dated January 24, 1967, a charge of $75 for a deposition taken in Dr. Faludi’s office in Shreveport. Dr. Faludi actually appeared and testified at the trial. The deposition was not admitted in evidence. Of course, the cost of taking a pretrial deposition is not an item of medical expense for treatment and is not recoverable as such. Soileau v. United States Fidelity & Guaranty Company, La.App., 158 So.2d 397. If recoverable at all, it would be as court costs. But since the deposition was not used, these pretrial costs cannot be allowed. Doug Ashy Lumber, Inc. v. Ducharme, La.App., 185 So.2d 848. Hence, the judgment must be amended to disallow this item of $75.
For the reasons assigned, the judgment appealed is amended to reduce the award for medical expense to $1,281.30. As thus amended, it is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed, as amended.