LOTTINGER, Judge.
This is a workmen’s compensation suit. The plaintiff, Adolph Hebert, sued Dugas & LeBlanc, Ltd., his employer, as well as Houston Fire & Casualty Insurance Company, its insurance carrier, in solido for 363 additional weeks of compensation at the rate of $35.00 per week, commencing on March 3, 1969, with legal interest on each weekly installment from the date due until paid; with a penalty of 12% of all compensation due, attorney’s fees of $3,000 and legal interest on both penalty and attorney’s fees from date of judgment until paid; and for judgment increasing the attorney’s fee to $3,500 if an appeal is taken from the judgment of the Lower Court.
Judgment was rendered in favor of plaintiff and against defendants for workmen’s compensation in the sum of $35.00 per week from April 11, 1969 not beyond 300 weeks for temporary total disability, subject to credit for compensation previously paid, together with 12% penalty and $2,500.00 attorney fees. Defendants have appealed.
At the trial of this matter it was stipulated that compensation benefits had been paid at the rate of $35.00 per week from February 23, 1968, to and including April 11, 1969, or a total of $2,065.00, and further, that medical expenses, having been incurred by the employee in the amount of $556.00, had been paid. There is no serious contention as to the fact that when the plaintiff was injured, he was so injured while working in the course and scope of his employment.
Very briefly, the plaintiff testified that while riding on a flat car as a brakeman in the employ of Dugas & LeBlanc, Ltd., his left foot was crushed between the flat car and a bale of bagasse which had fallen on or near the rails of a dummy tram-way. The accident happened at about 11:30 p.m. on November 29, 1967.
The main contention is that the plaintiff has suffered an injury which entitles him to total and permanent disability, while the defendants contend that whatever disability the plaintiff has suffered, ended as of the date on which they ceased to pay him corn- *218 pensation. The questions therefore before this Court are whether the plaintiff was still disabled, under the law, when his compensation payments were stopped, and whether the employer and its insurer acted arbitrarily, capriciously and without probable cause in discontinuing compensation payments as of April 11, 1969.
The day following the accident, November 30, 1967, the plaintiff went in to see Doctors Daigle and Reynolds. X-rays were taken and found to be negative for both bone displacement and fractures. The doctors noted that the plaintiff had an enormous amount of hemorrhage about and around the first toe of the left foot. His condition was diagnosed as acute traumatic injury of both legs and the left foot and ankle. He was again seen on December 2, and complained of some pain in his leg. He returned on December 4, 1967, again complaining of pain at the base, or the instep. The doctors noted that he had lost no time working and had continued with his job. On December 8, 1967, he returned to the doctor’s office and they noted that he still had some soreness. The plaintiff was not seen again by Dr. Daigle until February 23, 1968, at which time he complained that the pain had gotten worse in his left foot. This was re-x-rayed and still proved negative. He was thereupon placed on physical therapy treatment which consisted of ultra sound. He returned on the 26th and 28th day of P'ebruary for continuing physical therapy, and again on March 4.
When he returned on March 4, 1968, Dr. Daigle insisted on a consultation with Dr. Moss Bannerman, an orthopedic surgeon. Dr. Daigle did not see the plaintiff relative to this injury again until February 17, 1969, at which time the plaintiff informed Dr. Daigle that he was taking muscle relaxant tablets prescribed by Dr. Banner-man three times a day. When asked about the recovery time for this type of injury, Dr. Daigle testified that this usually took from three to six months, and this type of injury could limit the circulation of blood through the foot. Dr. Daigle further testified that all he knew about the plaintiff’s injury was acquired by examinations prior to the time that the plaintiff was sent to Dr. Bannerman.
On March 11, 1968, Mr. Hebert was first seen by Dr. Bannerman, who observed: “Considerable spasm and tightness of the calf muscles and some tenderness below the lateral malleolus and heel cord.” The foot was pointed downward and it was with considerable difficulty that the doctor could bring it up to the neutral position. The leg was placed in a walking cast and the plaintiff was advised to use crutches. The plaintiff was next seen on April 8, 1968, and advised to continue walking and discontinue the use of the crutches. The case was removed on April 22, and the plaintiff was able to get his foot flat. He was advised to use hot soaks on his foot. At his next visit on May 13, the plaintiff complained of pain around his heel cord, though he was walking rather well. On June 3, 1968, the doctor injected the heel cord with Hydrocortone, which is a cortisone-like preparation. The doctor here was of the impression that the plaintiff was improving, although rather slowly. On July 1, the plaintiff complained of pain around his ankle, the pain around his heel having lessened some. The plaintiff did tell the doctor that it hurt him when he walked a good bit. He was advised to continue the hot soaks and his Achilles tendon was injected.
On August 13, the x-ray was repeated, again negative, and the plaintiff was advised to use contrast baths and to try light work. He was again seen by Dr. Banner-man on September 12, with no change and again on October 14 and November 19 with the same results. On the last two visits the doctor again injected Hydrocor-tone for recurrent pain around the ankle, and was advised by the plaintiff that he had done some fishing, but his feet were still hurting him. On January 2, and 30, 1969, he was again seen by the doctor with no difference. When he was seen on *219 March 3, the doctor stated that he seemed somewhat better. There were no positive finding of swelling or instability, though the doctor felt that he still had some residual disability. Continued treatment and light work was indicated and eventual full recovery was thought probable on the basis of progress. He could move his foot and ankle quite well on this visit. X-rays were taken on the March 3rd visit and showed an improvement in' the over-all fixture of the bone.
He was next seen on April 7, 1969, at which time the doctor was informed by the plaintiff that he would get numb after walking for some distance and could not do a full day’s work or fishing because it would hurt him. He was checked over rather carefully and the doctor could only find about a half inch atrophy of the calf muscles which indicated that he was having fairly normal use of the leg. He was advised at this visit to try to return to work. He was again seen on June 3, and on this visit the doctor thought he was able to return to the type of work he had been doing although he would have some residual disability. The doctor testified that he was of the opinion that on June 3, the plaintiff had sufficient strength to carry out duties of a brakeman, although he still had some pain and discomfort around his ankle. He was lastly seen on July 1, 1969, at which time measurement indicated slightly less atrophy than when the doctor had seen him two months before. The doctor stated that as of July 1, he was of the further opinion that the plaintiff had sufficient strength and motion and everything to carry out the duties of a brakeman.
Taking into consideration the opinion of the doctor that as of April 7, 1969, the plaintiff should try to return to work, we cannot find where the defendants were arbitrary, capricious, or without probable cause in terminating the compensation benefits of the plaintiff. There was no question in the mind of this medical expert that the plaintiff should attempt to return to work, and we do not feel that the doctor would have suggested such unless he felt the plaintiff could attempt to perform this work without injuring himself. The defendants relied on the opinion of the attending physician, which opinion was without contradiction, and we are therefore of the opinion that the Trial Court was in error in finding that the defendants acted capriciously, arbitrarily and without probable cause in terminating compensation benefits.
It is the settled jurisprudence of this State that unless the employee is physically able to resume the type of work he was doing at the time of his injuries, he is disabled within the contemplation of the Workmen’s Compensation Act. Further, an injured employee is not required or expected to resume his work if same can only be done in great pain or suffering. Veillion v. Knapp & East, 158 So.2d 336 (La.App.3rd Cir.1963). The orthopedic surgeon has labeled the plaintiff as able to return to his former duties though he may suffer some pain. This doctor was apparently not of the opinion that the pain suffered would be great. There is no conflicting testimony to that of Dr. Banner-man’s. Therefore, in light of the medical testimony as above recited, we are of the opinion that the Trial Court erred in ruling in favor of the plaintiff for additional compensation benefits.
For the above and foregoing reasons, the judgment of the Trial Court is reversed, all costs of this appeal to be paid by plaintiff-appellee.
Judgment reversed.